(No. 106909.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. LEOBARDO DELVILLAR, Appellee.

*Opinion filed December 17, 2009.*

Lisa Madigan, Attorney General, of Springfield, and Richard A. Devine and Anita Alvarez, State's Attorneys, of Chicago (James E. Fitzgerald, Annette Collins and Mary L. Boland, Assistant State's Attorneys, of counsel), for the People.

Abishi C. Cunningham, Jr., Public Defender, of Chicago (Michael Davidson, of counsel), for appellee.

Scott D. Pollock, Kathryn R. Weber and Christina J. Murdoch, of Scott D. Pollock & Associates, P.C., and Stephen L. Tyma, all of Chicago, for *amici curiae* Chicago Chapter of the American Immigration Lawyers Association *et al.*

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Thomas, Karmeier, and Burke concurred in the judgment and opinion.

Justice Freeman specially concurred, with opinion.

Justice Kilbride specially concurred, with opinion.

## OPINION

Defendant, Leobardo Delvillar, was charged with several weapons violations. Defendant agreed to plead guilty to one count of aggravated unlawful use of a weapon by a felon in return for a sentence recommendation. Defendant later filed a motion to withdraw his guilty plea on the grounds that he is a resident alien, and not a United States citizen, and that the circuit court failed to admonish him of the potential immigration

consequences of his plea. The circuit court denied defendant's motion. The appellate court reversed and remanded for further proceedings. 383 Ill. App. 3d 80. The State then petitioned this court for leave to appeal, which we allowed pursuant to Supreme Court Rule 315 (210 Ill. 2d R. 315(a)).

## BACKGROUND

Defendant was arrested and charged in July 2003 with three counts of aggravated unlawful use of a weapon by a felon (720 ILCS 5/24—1.6(a)(1) (West 2002)) and two counts of unlawful use of a weapon by a felon (720 ILCS 5/24—1.1(a) (West 2002)). Defendant and the State reached a plea agreement on these charges under which defendant pled guilty to one count of aggravated unlawful use of a weapon. As agreed, the prosecutor recommended a sentence of four years in the Department of Corrections. The prosecutor also recommended the Department of Corrections' impact incarceration program, commonly referred to as "boot camp."

The plea hearing took place on November 2, 2005. The court first asked defendant if he was being forced or coerced into giving up the right to remain silent and to enter a guilty plea. Defendant answered "no." The court also asked defendant whether he was entering his plea freely and voluntarily. He answered "yes." Next, the court asked defendant whether he was a United States citizen. Defendant replied "yes." Based in part on this response, the court did not admonish defendant of any potential immigration consequences that might be imposed on a noncitizen as a result of a guilty plea. The court then accepted defendant's guilty plea. The court did not proceed to sentencing, however. Instead, in response to the request by defendant that he be permitted to finish a construction job, the court agreed to hold sentencing until a later court date.

At the sentencing hearing on November 30, 2005, the court ordered defendant to serve four years' imprisonment and recommended boot camp in accordance with the State's plea agreement offer. The court also advised defendant of his right to appeal, informing defendant that if he wished to appeal, he first had to file a motion to withdraw his guilty plea. The court admonished defendant that in his motion he would have to state all reasons for wanting to withdraw his guilty plea. Defendant indicated he had no questions about that requirement.

On December 15, 2005, defendant filed a motion to withdraw his guilty plea and vacate his conviction, asserting that he did not knowingly, intelligently, or voluntarily waive his right to trial or fully understand or comprehend the admonishments of the court at the time of his guilty plea. In his motion, defendant noted that at the time of his plea defense counsel was not aware of defendant's immigration status. The motion stated that defendant is not a United States citizen, but a resident alien. Defendant also contended that the court was required to advise him of the immigration consequences of his guilty plea and that the court failed to do so.

In a hearing on defendant's motion, the court reviewed the transcripts of defendant's plea hearing and confirmed that he had stated he was a United States citizen. In response, defense counsel suggested that defendant was a resident alien and that was the source of defendant's confusion at the plea hearing. The court stated, "he [defendant] lied to the court." The court then denied defendant's motion to withdraw his guilty plea. Defendant appealed.

The appellate court reversed, holding that the circuit court was required to admonish defendant of the potential immigration consequences of a guilty plea. The State filed a petition for leave to appeal, which this court

granted pursuant to Supreme Court Rule 315 (210 Ill. 2d R. 315(a)). We then allowed the Chicago Chapter of the American Immigration Lawyers Association, the Legal Assistance Foundation of Chicago, the National Immigrant Justice Center, the Illinois Coalition for Immigrant and Refugee Rights, and the Immigration Project to file a joint brief *amicus curiae* in support of defendant. 210 Ill. 2d R. 345.

The question presented to this court is whether the failure to admonish defendant of the possible immigration consequences of his guilty plea, pursuant to section 113—8 of the Code of Criminal Procedure of 1963, required the circuit court to grant defendant's subsequent motion to withdraw his guilty plea and vacate a defendant's conviction. For the reasons that follow, we conclude that the failure to admonish did not require the circuit court to allow defendant's motion. We, therefore, reverse the decision of the appellate court and affirm the judgment of the circuit court.

## ANALYSIS

Defendant's argument in the appellate court and the appellate court decision itself rely on a particular interpretation of a provision within the Code of Criminal Procedure. The relevant provision is as follows:

"Before the acceptance of a plea of guilty, guilty but mentally ill, or nolo contendere to a misdemeanor or felony offense, the court shall give the following advisement to the defendant in open court:

'If you are not a citizen of the United States, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States.' " 725 ILCS 5/113—8 (West 2006).

The appellate court concluded that the above admonishment is mandatory and that the circuit court's failure to admonish defendant in accordance with section 113—8

required a reversal, regardless of defendant's immigration status. 383 Ill. App. 3d at 88-89. The appellate court also acknowledged that another appellate court decision, *People v. Bilelegne*, 381 Ill. App. 3d 292 (2008), came to a different conclusion. The *Bilelegne* court held that this section is directory, and that the circuit court did not err in denying the defendant's motion to withdraw his guilty plea. *Bilelegne*, 381 Ill. App. 3d at 297.

Before this court, the State argues that the *Bilelegne* court was correct in holding that section 113—8 is directory in nature and does not require the circuit court to allow a motion to withdraw a guilty plea in all cases. In response, defendant again argues that the appellate court correctly held that section 113—8 is mandatory and the failure to give the admonishment requires the court to allow withdrawal of defendant's guilty plea. Resolution of this issue requires an explanation of two distinct questions that are, as this court has acknowledged, easily confused because they both contain the term "mandatory."

One question asks whether a statute is mandatory or permissive. In answering this question, the term mandatory " 'refers to an obligatory duty which a governmental entity is required to perform.' " *People v. Robinson*, 217 Ill. 2d 43, 51 (2005), quoting *Morris v. County of Marin*, 18 Cal. 3d 901, 908, 559 P.2d 606, 610-11, 136 Cal. Rptr. 251, 255-56 (1977). The term permissive refers to a discretionary power, which a governmental entity " 'may exercise or not as it chooses.' " *Robinson*, 217 Ill. 2d at 51, quoting *Morris*, 18 Cal. 3d at 908, 559 P.2d at 610-11, 136 Cal. Rptr. at 255-56.

The second question asks whether a statutory provision is mandatory or directory. Under this question, statutes are mandatory if the intent of the legislature dictates a particular consequence for failure to comply with the provision. *Pullen v. Mulligan*, 138 Ill. 2d 21, 46

(1990). In the absence of such intent the statute is directory and no particular consequence flows from noncompliance. That is not to say, however, that there are *no* consequences. A directory reading acknowledges only that no specific consequence is triggered by the failure to comply with the statute. *Carr v. Board of Education of Homewood-Flossmoor Community High School District No. 233*, 14 Ill. 2d 40, 44 (1958) (reading as directory a provision requiring execution of affidavits of qualifications during an election, where statute did not expressly void ballots cast without such affidavits).

The facts of *People v. Robinson*, 217 Ill. 2d 43 (2005), serve to clarify the distinction between these two dichotomies. In *Robinson* this court was asked to interpret a provision of the Post-Conviction Hearing Act that addresses the procedures governing the circuit court when it determines that a postconviction petition is frivolous or patently without merit. 725 ILCS 5/122–2.1(a)(2) (West 2000). The statute provides that the circuit court " 'shall dismiss the petition in a written order ***. Such order of dismissal is final and shall be served upon the petitioner by certified mail within 10 days of its entry.' " *Robinson*, 217 Ill. 2d at 50, quoting 725 ILCS 5/122–2.1(a)(2) (West 2000).

After Robinson's petition was summarily dismissed by the circuit court, the clerk failed to serve Robinson with the order of dismissal until 12 days after the court entered the order. This service clearly did not comply with the language of the statute requiring service within 10 days of the judgment. Robinson argued on appeal that the language of the statute is mandatory and that, therefore, the appellate court should remand his case for further proceedings under the Post-Conviction Hearing Act. The appellate court agreed and directed the circuit court to conduct further proceedings.

This court reversed the appellate court. In considering the distinction between mandatory and directory provisions, this court first pointed out "there is no genuine dispute that the 10-day notice requirement has the force of a command and that it imposed a mandatory obligation on the clerk." *Robinson*, 217 Ill. 2d at 50. It was clear the legislature did not intend the provision to be a mere suggestion to the clerk of the court. The real issue in *Robinson* was determining the consequence of the clerk's noncompliance. *Robinson*, 217 Ill. 2d at 51-52.

Like the provision in *Robinson*, the admonishment informing defendants of immigration consequences in the present case is mandatory in the sense that the circuit court does not have discretion in giving the admonishment. That is, the statute is mandatory with respect to the mandatory/permissive question. The statute imposes an obligation on the court to give the admonishment. The admonishment must be given regardless of whether a defendant has indicated he is a United States citizen or whether a defendant acknowledges a lack of citizenship. Thus, to the extent that defendant argues a mandatory reading leads to the conclusion that the circuit court was required to give the admonishment, he is correct.

However, this court recognizes, as we did in *Robinson*, that the dispositive issue in this case is not whether the statute is mandatory or permissive. Rather, the issue here is the second question, whether the statute is mandatory or directory. This separate dichotomy determines the consequences of a failure to give the admonishment. See *Robinson*, 217 Ill. 2d at 52. To reiterate, the mandatory/directory dichotomy " 'simply denotes whether the failure to comply with a particular procedural step will or will not have the effect of invalidating the governmental action to which the procedural requirement relates.' " *Robinson*, 217 Ill. 2d at 51-52, quoting

*Morris v. County of Marin*, 18 Cal. 3d 901, 908, 559 P.2d 606, 610-11, 136 Cal. Rptr. 251, 255-56 (1977). In considering this question, the *Robinson* court set out the applicable framework for evaluating a statute.

Whether a statute is mandatory or directory is a question of statutory construction, which we review *de novo*. *Robinson*, 217 Ill. 2d at 54. The statutory language is the most reliable evidence of the legislature's intent. *Pullen v. Mulligan*, 138 Ill. 2d 21, 46 (1990). With respect to the mandatory/directory dichotomy, we presume that language issuing a procedural command to a government official indicates an intent that the statute is directory. *Robinson*, 217 Ill. 2d at 58. This presumption is overcome under either of two conditions. A provision is mandatory under this dichotomy when there is negative language prohibiting further action in the case of noncompliance or when the right the provision is designed to protect would generally be injured under a directory reading. *Robinson*, 217 Ill. 2d at 58.

Neither condition applies in this case. Section 113—8 lacks any negative language prohibiting further action. For example, the statute does not prevent the circuit court from accepting defendant's guilty plea if the court fails to give the section 113—8 admonishment. At one point in the legislative process, the proposed section 113—8 did include such additional language providing a remedy for failure to give the admonishment. That version of the legislation indicated that the circuit court "shall vacate the judgment and permit the defendant to withdraw the plea of guilty" if the defendant demonstrated that his conviction of the offense to which he pleaded guilty may have immigration consequences. 93d Ill. Gen. Assem., Senate Bill 43, 2003 Sess. (as introduced). The legislature affirmatively chose, however, to eliminate this provision before passage. The presumption we recognized in *Robinson*, that procedural commands

are directory, cannot be overcome by the enacted language of section 113—8.

With respect to the other condition identified in *Robinson*, we must first identify the right the statute was intended to protect. The right to be protected here is the right of a defendant to intelligently waive a jury trial and enter a guilty plea. Section 113—8 attempts to protect this right by informing defendants that there could be potential immigration consequences to entering a guilty plea. The legislature clearly thought this information is important to a defendant when making his decision to plead guilty.

We next ask whether the right that the statute intends to protect would be generally injured by a directory reading of the statute.

In *Robinson*, we noted that the right to appeal might be injured by untimely service in a given case. *Robinson*, 217 Ill. 2d at 57. However, we noted there is no reason to believe that it generally would be. *Robinson*, 217 Ill. 2d at 57. This was because even in cases where notice was several days late, there would often remain sufficient time within which the defendant could file a notice of appeal and therefore preserve his right to appeal.

In this case, we cannot say that the right the legislature intended to protect would generally be injured. Although an individual defendant's right to waive a trial might be injured by the failure to give the admonishment required by section 113—8, it cannot be said that it generally would be so. Immigration consequences—in particular, deportation—are not applicable to United States citizens. See *Oforji v. Ashcroft*, 354 F.3d 609, 619 (7th Cir. 2003) (Posner, J., concurring). Citizens accordingly face no immigration consequences as a result of entering a guilty plea. Therefore, the presence or absence of the admonishment in a case involving a United States citizen does not affect a defendant's right to waive his or

her trial, as the information intended to be provided by the statute is not useful to that defendant.

A defendant's right to intelligently waive a jury trial and plead guilty might be affected in a case where the defendant is not a United States citizen, and where the crime for which the defendant is entering a plea is one that could trigger immigration consequences. However, in another case a defendant may have reasons for pleading guilty even in the face of such consequences. Thus, because a defendant's right to waive a jury trial and enter a guilty plea will not necessarily be harmed in the absence of the admonishment, we conclude that the presumption of a directory reading of section 113—8 is not overcome. As neither condition articulated in *Robinson* serves to overcome the presumption of a directory reading in this case, we conclude that the legislature intended such a reading.

In summary, we conclude that section 113—8 is mandatory in that it imposes an obligation on the circuit court to admonish all defendants of the potential immigration consequences of a guilty plea. However, the admonishment is not mandatory with respect to the mandatory-directory dichotomy. Thus, failing to issue the admonishment does not automatically require the court to allow a motion to withdraw a guilty plea. Rather, the failure to admonish a defendant of the potential immigration consequences of a guilty plea is but one factor to be considered by the court when ruling on a defendant's motion to withdraw a guilty plea.

The decision to grant or deny a motion to withdraw a guilty plea rests in the sound discretion of the circuit court and, as such, is reviewed for abuse of discretion. *People v. Walston*, 38 Ill. 2d 39, 42 (1967). An abuse of discretion will be found only where the court's ruling is arbitrary, fanciful, unreasonable, or no reasonable person would take the view adopted by the trial court. *People v.*

*Patrick*, 233 Ill. 2d 62, 68 (2009), quoting *People v. Hall*, 195 Ill. 2d 1, 20 (2000). A defendant does not have an automatic right to withdraw a plea of guilty. *People v. Jamison*, 197 Ill. 2d 135, 163 (2001). Rather, defendant must show a manifest injustice under the facts involved. *Jamison*, 197 Ill. 2d at 163. The decision of the trial court will not be disturbed unless the plea was entered through a misapprehension of the facts or of the law, or if there is doubt as to the guilt of the accused and justice would be better served by conducting a trial. *Jamison*, 197 Ill. 2d at 163. Where the defendant has claimed a misapprehension of the facts or of the law, the misapprehension must be shown by the defendant. *Walston*, 38 Ill. 2d at 44.

With regard to inadequate admonishments, the failure to properly admonish a defendant, standing alone, does not automatically establish grounds for reversing the judgment or vacating the plea. *People v. Fuller*, 205 Ill. 2d 308, 323 (2002). Rather, a reviewing court focuses on whether the guilty plea was affirmatively shown to have been made voluntarily and intelligently. *Fuller*, 205 Ill. 2d at 322.

This court has long established that, with respect to voluntariness, the pertinent knowledge to be provided by the court prior to accepting a guilty plea includes only the direct consequences of the defendant's plea. *People v. Manning*, 227 Ill. 2d 403, 415 (2008). Direct consequences of a plea are those consequences affecting the defendant's sentence and other punishment that the circuit court may impose. *People v. Williams*, 188 Ill. 2d 365, 372 (1999).

Collateral consequences, on the other hand, are effects upon the defendant that the circuit court has no authority to impose. A collateral consequence is one that results from an action that may or may not be taken by an agency that the trial court does not control. *Williams*, 188 Ill. 2d at 372. Due process does not require that the

defendant be informed of the collateral consequences of a guilty plea. *Williams*, 188 Ill. 2d at 371 ("the defendant's knowledge of the collateral consequences of a guilty plea is not a prerequisite to the entry of a knowing and intelligent guilty plea").

Immigration consequences are collateral consequences. *Williams*, 188 Ill. 2d at 372; *People v. Huante*, 143 Ill. 2d 61, 71 (1991). As such, the failure to admonish a defendant of potential immigration consequences does not affect the voluntariness of the plea. Defendant argues that section 113—8 was intended to correct a deficiency in guilty plea admonishments that courts were not required to inform defendants of immigration consequences. Defendant correctly states the legislature's intent. As discussed above, section 113—8 changed what is required of the circuit court in accepting a defendant's guilty plea to include an admonition about the potential immigration consequences of that plea. However, the change in law reflected in section 113—8 cannot elevate potential immigration actions from collateral consequences to direct consequences. It is well established that a legislature cannot, without a constitutional amendment, deprive a defendant of a constitutionally protected right. *People ex rel. Daley v. Joyce*, 126 Ill. 2d 209, 222 (1988). Likewise, although the legislature intended to further protect a defendant's right to voluntarily enter a guilty plea, the legislature cannot by statute alone add to what is constitutionally required of the circuit court. See *Tappy v. State ex rel. Byington*, 82 So. 2d 161, 172 (Fla. 1955) (Terrell, J., dissenting, joined by Thomas, J.) (noting that a legislature cannot expand, contract or modify constitutional requirements for holding elective office). Here, the effect of the statute is to require that defendants be informed of this one particular collateral consequence as well as the direct consequences of a guilty plea. In this case, because such consequences remain col-

lateral, the failure to admonish defendant of such consequences does not call into question the constitutional voluntariness of his guilty plea.

However, as with other imperfect admonishments, although the failure to admonish a defendant of potential immigration consequences does not rise to a constitutional violation, reversal may yet be required if real justice has been denied or if the defendant has been prejudiced by the inadequate admonishment. *Fuller*, 205 Ill. 2d at 323. Prejudice was a critical question considered by this court in *Robinson*. As noted above, we concluded that the statute in that case was directory. The clerk of the court in *Robinson* had a statutory duty to serve timely notice on petitioner. We recognized that the petitioner possessed a right to timely service that corresponds with the clerk's duty to provide it. However, we also concluded that the petitioner was not entitled to a remedy because, even without being timely served, he filed his notice of appeal on time. As such, the petitioner was not prejudiced by the clerk's error. *Robinson*, 217 Ill. 2d at 47.

Again, it is defendant who must demonstrate that he has been prejudiced by the improper admonishment. *Walston*, 38 Ill. 2d at 44. In this case defendant has not done so. In his motion to withdraw his guilty plea and at argument on the motion, defendant failed to demonstrate that he was subject to any potential immigration penalties or that he would have pleaded not guilty had he been admonished of those potential consequences. After having answered "yes" to the question whether he was a United States citizen in a previous hearing, defendant made no attempt to prove his resident alien status to the court in the subsequent hearing on his motion.

Further, although the *amici* have presented this court with several possible immigration consequences for noncitizens convicted of weapons felonies, we reiterate

that defendant failed to show the circuit court, in his motion or argument, that any of those consequences have been or will be applied to him. The circuit court was left to decide, based solely on defendant's conflicting assertions, whether defendant had told the truth at the guilty plea hearing, or was telling the truth at the hearing on his motion to withdraw that plea.

Nor did defendant demonstrate that he misunderstood the court's admonishments. In trying to explain why he told the court he was a United States citizen, defendant offered only the bare assertion that he had misunderstood the court when it asked about his citizenship. Defendant did not establish that he had difficulty hearing or understanding the court's admonishments in English.

Indeed, the record reflects that defendant understood the court's questions. At one point in the proceedings, counsel for defendant asked that the court postpone sentencing until defendant was able to complete a construction job. Counsel suggested that defendant could provide verification, at which point defendant interjected, "I have a contract." The court accepted defendant's word that he was engaged in the construction job, and asked defendant whether four weeks would be enough time. To this defendant responded, "[s]hould be fine, your Honor." Throughout the proceedings, defendant demonstrated an understanding of what the court was asking him. Based on these responses, a reasonable person could conclude that defendant understood the court when it asked whether defendant was a United States citizen.

In his motion to withdraw his guilty plea, defendant claims only that the circuit court failed to give the section 113—8 admonishment and that he is a resident alien, and not a United States citizen. These claims alone fall short of meeting defendant's burden to show that he suffered prejudice as a result of the circuit court's failure

to admonish him. We therefore conclude that the circuit court did not abuse its discretion by denying defendant's motion to withdraw his guilty plea.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the appellate court, vacating denial of defendant's motion to withdraw his guilty plea, and affirm the judgment of the circuit court.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE FREEMAN, specially concurring:

I joined fully in this court's decision in *People v. Robinson*, 217 Ill. 2d 43 (2005), because I believed at the time that the analysis contained in it would ease the confusion that arises when courts seek to classify statutes as mandatory or directory. However, in the time since we filed our decision in *Robinson*, the confusion appears to be unabated. See *People v. Garstecki*, 234 Ill. 2d 430, 435-36 (2009) (explaining split in appellate court over the classification of Supreme Court Rule 431); *People v. Ousley*, 235 Ill. 2d 299, 311 (2009) (noting that "confusion persists" post-*Robinson*). Because of this, I am convinced that the analysis used in *Robinson* is no longer helpful. So, while I agree with the result reached in today's opinion, I write separately to express my views on the mandatory/directory question.

The issue in this case can be stated simply as: What are the consequences when the trial court fails to give an admonishment to a defendant in open court that the General Assembly indicated "shall" be given in section 113—8? Generally, the legislature does not intend its statutory provisions to be disregarded, but "not all directives and requirements declared in statute law should be understood to have equal force." 3 N. Singer, Sutherland on Statutory Construction §57:1, at 6 (6th rev. ed. 2001).

I am no longer confident that the resolution of the mandatory/directory issue requires a discussion of two "distinct" questions that are "easily confused" because they both contain the term "mandatory." 235 Ill. 2d at 514. I think the use of the two questions, as set forth in today's opinion, further confuses the issue because "[a]s a matter of terminology, mandatory statutes are usually said to be imperative and directory statutes permissive." 3 N. Singer §57:1, at 4. Yet, under this court's analysis a statute found to be permissive under the first question may, under the second question, still be mandatory. That is confusing since permissive statutes are, by their nature, directory.

The question of whether a statutory provision has a mandatory or directory character is one of statutory construction. *Pullen v. Mulligan*, 138 Ill. 2d 21, 46 (1990). The ordinary meaning of the language should always be favored, and the form of the verb used in a statute, such as "shall" or "may," is "the single most important textual consideration determining whether a statute is mandatory or directory." 3 N. Singer §57:3, at 13-14. However, even that is "still not the sole determinant, and what it naturally connotes can be overcome by other considerations." 3 N. Singer §57:3, at 14. In this way, "[a]ll pertinent intrinsic and extrinsic aids to construction are applicable when determining whether statutory provisions are mandatory or directory." 3 N. Singer §57:3, at 11. For this reason, "shall" can be construed as directory (see, *e.g.*, *United Illuminating Co. v. City of New Haven*, 240 Conn. 422, 692 A.2d 742 (1997)), while "may" can be construed as mandatory (see, *e.g.*, *T.W. Morton Builders, Inc. v. von Buedingen*, 316 S.C. 388, 450 S.E.2d 87 (1994)). Whether language in a statute is mandatory or directory must be determined "on a case by case basis" with "the criterion whether such requirement is mandatory or directory is whether such require-

ment is essential to preserve the rights of the parties." 3 N. Singer §57:3, at 21-22.

Here, although the General Assembly used "shall" in section 113—8, it did not set forth any specific consequences for the failure to follow the directive. Generally, "[w]hen a statute specifies what result will ensue if its terms are not complied with, the statute is deemed mandatory ***; [h]owever, if it merely requires certain things to be done and nowhere prescribes results that follow, such a statute is merely directory." 3 N. Singer §57:3, at 23-24. This same rule finds support in our case law:

> "The general rule in determining whether a statute is mandatory or advisory is as follows: 'Where the terms of a statute are preemptory and exclusive, where no discretion is reposed or where penalties are provided for its violation, the provisions of the act must be regarded as mandatory.' " *Tuthill v. Rendelman*, 387 Ill. 321, 350 (1944), quoting *Clark v. Quick*, 377 Ill. 424, 430 (1941).

A corollary of this rule is that the lack of consequences for noncompliance "leads to a directory construction." 3 N. Singer §57:8, at 35. Indeed, this court has held that the lack of specific consequences for noncompliance following a statutory command results in a directory construction. See *Carrigan v. Illinois Liquor Control Comm'n*, 19 Ill. 2d 230, 233-34 (1960). This is so as long as the rights sought to be protected are not affected by the failure to act. *Carrigan*, 19 Ill. 2d at 233. In this case, the failure to act does not render defendant unable to challenge the validity of his guilty plea. Defendant, like any other defendant, has the ability to seek to withdraw his guilty plea on the basis of the imperfect admonishment. As Justice Kilbride points out, defendant has failed to establish in his motion that the trial court's failure to admonish him under section 113—8 injured the right the General Assembly sought to protect. 235 Ill. 2d at 530 (Kilbride, J., specially concurring).

I believe the mandatory/directory analysis set forth above is more clear than that employed in today's opinion. The majority notes that the dispositive issue in this case is not whether the statute is "mandatory or permissive," but whether the statute is "mandatory or directory." 235 Ill. 2d at 516. I am not sure what that means because if a statute is permissive, it is directory. *People v. Reed*, 177 Ill. 2d 389, 393 (1997). To discern whether the statute is "mandatory or directory," the court then states that the statutory language is the most reliable evidence of the legislature's intent, and that "we presume that language issuing a procedural command to a government official indicates an intent that the statute is directory." 235 Ill. 2d at 517. This presumption is overcome under either of two conditions: (1) when negative language prohibiting further action in the case of noncompliance or (2) when the right the provision is designed to protect would generally be injured under a directory reading. 235 Ill. 2d at 517. I find the use of a presumption unnecessary. Consider the following hypothetical. Suppose the statute at issue had contained the following sentence after the "command": Failure to so advise a defendant invalidates a plea of guilty. According to the analysis set forth in the majority opinion, rather than give immediate effect to that language (invalidate the plea), a court of review must first "presume" that there are no mandated consequences except if negative language appears. I fail to see why the court's presumption would arise if the statute expressly states the consequences.

In all other respects, I join in the majority's opinion.

JUSTICE KILBRIDE, also specially concurring:

While I agree with both the judgment and the majority of this court's analysis, I disagree with its definition of the right section 113—8 was intended to protect, and

consequently, with a portion of the subsequent analysis. Therefore, I specially concur in the opinion.

The majority relies heavily on the analysis in *People v. Robinson*, 217 Ill. 2d 43 (2005). In *Robinson*, this court examined a statute requiring orders dismissing petitions for postconviction relief to be served on the petitioners within 10 days. 235 Ill. 2d at 515; *Robinson*, 217 Ill. 2d at 50. We determined that the right the legislature intended to protect could be broadly defined as the right to appeal. 235 Ill. 2d at 518; *Robinson*, 217 Ill. 2d at 57. We reasoned that the right to appeal was not generally injured by service at a later date because sufficient time would, nonetheless, often remain for defendants to file a timely notice of appeal. We then concluded that the statute was directory, despite the potential harm statutory violations could cause to the appeal rights of *all* postconviction petitioners. 235 Ill. 2d at 518; *Robinson*, 217 Ill. 2d at 57.

In contrast, a violation of section 113—8 is not potentially harmful to *all* defendants. Indeed, noncompliance with section 113—8 is not potentially harmful to the rights of the vast majority of Illinois defendants because "[i]mmigration consequences—in particular, deportation—are not applicable to United States citizens." 235 Ill. 2d at 518. As the majority recognizes, our legislature "clearly thought" that information "informing defendants that there could be potential immigration consequences to entering a guilty plea" was "important to a defendant when making his decision to plead guilty." 235 Ill. 2d at 518. Implicit in this recognition is the fact that only defendants who are not United States citizens would find this information important in their decision-making. Unlike the statute in *Robinson*, the legislature did not intend section 113—8 to protect a broadly applicable right. Rather, the legislature intentionally targeted the statute to protect the rights of a select group of defendants, namely those whose immigration status

could be affected by entering a guilty plea. Thus, the right the legislature intended section 113—8 to protect is not properly defined as the broad right of *all* defendants "to intelligently waive a jury trial and enter a guilty plea" (235 Ill. 2d at 518), but rather as the right of noncitizen defendants to be informed that a guilty plea could result in negative immigration consequences.

Applying that definition of the protected right, we would next consider "whether the right that the statute intends to protect would be generally injured by a directory reading of the statute." 235 Ill. 2d at 518. Instead of concluding that the protected right would not generally be injured because most defendants are citizens who are not subject to potential immigration consequences (235 Ill. 2d at 518), however, this court should review defendant's conduct at the guilty plea hearing and the allegations in his motion to withdraw the guilty plea and vacate his conviction. Based on those factors, we would then decide whether defendant has adequately established that he "is not a United States citizen" and that "the crime for which [he] is entering a plea is one that could trigger immigration consequences." 235 Ill. 2d at 519.

Here, defendant's motion alleged that "[a]t the time of his plea, defense counsel was unaware of defendant's immigration status. Defendant is not a United States Citizen but is a resident alien" and that "[n]either defense counsel nor the State made the court aware of the above facts concerning defendant's immigration status." During the trial court's questioning at defendant's plea hearing, however, defendant's response indicated that he was a United States citizen, creating a conflict with the allegations in the motion. No documents were attached to the motion to establish defendant's immigration status definitively. Nor did defendant's motion contain any allegation that a guilty plea to the charged offense could trigger negative immigration consequences.

530

Defendant has not met his burden of showing that the trial court's failure to admonish him under section 113—8 generally injured the right our legislature intended to protect.

Consequently, I agree with the majority's conclusion that defendant has not overcome the presumption that the legislature intended a directory reading of section 113—8. 235 Ill. 2d at 519. Because I respectfully disagree with the majority's definition of the right the legislature intended to protect by enacting section 113—8 and a portion of the following analysis, however, I specially concur in the opinion.