# Illinois Official Reports

## Appellate Court

*People v. Moore*, 2021 IL App (2d) 200407

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRANDON M. MOORE, Defendant-Appellant. |
| District & No. | Second District No. 2-20-0407 |
| Filed | October 27, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 15-CF-226; the Hon. Daniel B. Shanes, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Thomas A. Lilien, Christopher McCoy, and Zachary Wallace, of State Appellate Defender's Office, of Elgin, for appellant. |
| | Eric F. Rinehart, State's Attorney, of Waukegan (Patrick Delfino, Edward R. Psenicka, and Mary Beth Burns, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion. Justices Zenoff and Hudson concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendant, Brandon M. Moore, appeals from the trial court's denial of his motion to withdraw his guilty plea to armed robbery while armed with a dangerous weapon other than a firearm (720 ILCS 5/18-2(a)(1) (West 2014)), alleging that the factual basis was inadequate to support his guilty plea. We affirm.

¶ 2                                 I. BACKGROUND

¶ 3    On February 11, 2015, defendant was indicted on one count of armed robbery while armed with a firearm (*id.* § 18-2(a)(2)), one count of attempted armed robbery (*id.* §§ 8-4(a), 18-2(a)(2)), one count of robbery (*id.* § 18-1(a)), two counts of unlawful possession of a stolen vehicle (625 ILCS 5/4-103(a)(1), (3) (West 2014)), one count of aggravated battery (720 ILCS 5/12-3.05(c) (West 2014)), two counts of aggravated unlawful use of a weapon (*id.* §§ 24-1.6(a)(1), (a)(3)(C); (a)(1), (a)(3)(A-5)), and one count of resisting a peace officer (*id.* § 31-1(a-7)).

¶ 4    On August 19, 2015, the parties appeared for case management. Although there had been "extensive and ongoing negotiations," the court noted that they had not been "fruitful." The court observed that "defendant is charged with armed robbery, with a 15-year enhancement. The way the statutory scheme is, the minimum if they prove what they've charged, 21 years in prison. That stacks a lot of cards on the State's side." The State indicated that the last offer was "14 years at 50 percent. So it would get rid of the enhancement." The court explained the offer to defendant, stating that, although armed robbery is normally a Class X felony punishable by between 6 to 30 years in prison, "[t]hey've got it alleged to have a gun involved." The court explained that if the State proved that a gun was involved, "then whatever that 6 to 30 number is, somewhere in there, I have to add 15 years to it. So 6 plus 15 is 21, and 30 plus 15 is 45." The court stated: "I have to sentence you to between 21 and 45 years in prison." The court further explained that the attorneys had discussed ways to resolve the case without a trial. The court stated: "What that means is if you wanted to—and this is up to you—you could plead guilty to where they would amend it. They'd change it to regular armed robbery without a gun to get under that 21 years." The court emphasized that it was defendant's decision. The court stated: "My job though is to make sure you understand what the range is if you go to trial because, like I said, that really involves you and me the most." The court continued: "If you go to trial on the armed robbery and lose and they prove the gun enhancement and the armed robbery, I cannot sentence you to 14 years. I have to sentence you to at least 21." Defendant indicated that he understood. The court continued the matter.

¶ 5    The parties next discussed negotiations on April 27, 2016, at which time they requested a conference pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012). Defendant agreed to the court's participation in the conference, and the matter was continued.

¶ 6    On May 2, 2016, the court confirmed with defendant that he had spoken with counsel about the Rule 402 conference. The court summarized what had transpired. At one point, the court stated: "We spent a lot of time talking about if you lost [on] that armed robbery with a firearm count, how the Judge would have to sentence you to a minimum of 21 years, and that would just be for what happened at the currency exchange." The court further stated: "And if you look at what happened at the bank and the other things, too, of course, it could be even higher than that." The court explained: "[I]f you were to plead guilty, [the] State would be willing to

- 2 -

amend the charge from robbery to aggravated robbery, still a very serious charge, but less serious than armed robbery." The court told defendant that aggravated robbery was punishable by 4 to 15 years in prison and that "when it came to sentencing on the aggravated robbery charge, I imagine that the sentence you might get, based upon what I heard, and you already knew, probably between the 10 to 14 years, maybe around 12 at 50 percent." The court again advised defendant that, "after trial, if you lose the armed robbery with a firearm, nobody can go less than 21 years." Defendant indicated that he understood. Defense counsel asked for more time to confer with defendant.

¶ 7        On May 4, 2016, defense counsel told the court that defendant wished to go to trial. The court again told defendant that if the State proved possession of a firearm, the minimum sentence was 21 years. The court reminded defendant that, during the Rule 402 conference, the State advised that in exchange for a plea of guilty the State would amend the armed robbery count to aggravated robbery, which is a Class 1 felony punishable by 4 to 15 years. Defendant confirmed that he wished to go to trial.

¶ 8        Defendant's jury trial began on May 16, 2016. At the outset of the trial, the court clarified that the State was proceeding on the charges of armed robbery and robbery. (The State nol-prossed the charges of aggravated battery and resisting a peace officer; the remaining charges were severed.) During opening statements, the State told the jury that, on the evening of January 23, 2015, the victim, Marquel Johnson, went to a currency exchange to cash his paycheck. As Johnson was returning to his car, defendant approached him from behind, grabbed him around the waist, and said, " 'Give it to me.' " Defendant "had in his hand a loaded [.]38-caliber firearm." A struggle ensued. Defendant's friend, Anthony Kindle, who had accompanied defendant to the currency exchange, exited his vehicle and participated in the struggle. Defendant dropped "the gun" and Johnson dropped his car keys. Eventually, defendant and Kindle left, picking up the keys and the gun. Johnson returned to the currency exchange and called 911. Police located a vehicle nearby being driven by defendant that matched the description provided by Johnson. A high-speed chase ensued. Eventually, defendant and Kindle jumped from the moving vehicle and fled on foot. An officer pursued defendant on foot and, after briefly losing sight of defendant, apprehended him. Johnson's keys were found in defendant's possession. A "[.]38-caliber revolver" was found on top of a building near where the pursuing officer had briefly lost sight of defendant. Defendant's DNA was found on the gun.

¶ 9        Johnson testified, in pertinent part, as follows. As he was walking to his vehicle after cashing a check at a currency exchange, he was grabbed from behind by a "light-skinned dude with dreads." The individual said, " 'Give me that.' " Johnson grabbed toward the individual's hands and "felt a pistol." Johnson testified that "[i]t felt like a revolver." Johnson and the individual wrestled each other to the ground. The individual called out to his friend for help. The friend came over and kicked Johnson a few times. Eventually, Johnson got away and called for help. He saw the individual and his friend drive off in an "older-looking" maroon vehicle, like a "Toyota Corolla." Johnson identified photographs of the currency exchange, his vehicle, various injuries he sustained during the incident, and his car keys. He also identified the recording of his 911 call, which was played for the jury.

¶ 10        Waukegan police officer Jason Lau testified that he spoke with Johnson at the currency exchange immediately after the incident. Johnson described the person who grabbed him as "[a] male black, possibly light-skinned, possibly mix[ed], with long dreads, wearing a long—

or a winter hat. He said a black-and-white coat. Dark khakis. And he said he was wearing yellow gym shorts underneath those dark khakis."

¶ 11    Waukegan police officer Brian Falotico testified that he showed Johnson two different photo lineups, each containing six different individuals. They were entered into evidence as People's exhibit Nos. 40 and 41. Johnson identified one of the individuals in People's exhibit No. 41 as the person who grabbed him.

¶ 12    After Falotico testified, the trial court adjourned the proceedings for the day.

¶ 13    The next day, defense counsel informed the trial court that, at the end of the previous day, defendant had told her that he "wanted to take a negotiation" and that she then contacted the State. Defense counsel told the court that the assistant state's attorney "took the night to decide whether or not she wanted to allow him to enter into a negotiation because [they] were in the middle of trial." After taking the evening to think about it, the State told defense counsel that it would agree to negotiation but that "[t]he terms of it had changed from what the offer was prior to trial." Defense counsel told the court that defendant agreed to the terms. The State presented the terms as follows:

> "The State would ask leave to amend Count 1, currently charged armed robbery with a firearm as a Class X with the enhancement of 21 to 45. We would ask leave to amend the term firearm with that count to dangerous weapon, making it a regular Class X. The other counts that have not—I have already dismissed Counts 6 and 9. The remaining counts would be dismissed. And that he would receive 15 years in the Department of Corrections."

¶ 14    After hearing the terms, the trial court asked defendant if that was what he wanted to do. Defendant confirmed that it was. The court asked defense counsel to explain "on the record a little bit why the Court should accept this negotiation during trial." Counsel stated:

> "Judge, I know it's not the Court's general habit to enter into negotiations once we have started a trial. However, [defendant] is very young. He was 19 at the date of offense. He has one misdemeanor prior, a juvenile prior; no adult felony at all. The Court received a lot of mitigation about [defendant] during the 402 [conference]. As the Court is aware, we had been in constant negotiations with the State for quite some time. And I think due to his age and what the Court knows about him, I think it's different than the usual situation that we find ourselves in. So I would ask the Court to make an exception in this case."

¶ 15    The trial court asked defendant his age, whether he was under the influence of any drugs or alcohol or medication, whether he was a citizen, and whether he could read and write. The court again advised defendant that he was charged with armed robbery, which was ordinarily punishable by a sentence of between 6 and 30 years, but because the charge alleged that the robbery was committed with a firearm, the court had to add 15 years, making the sentencing range between 21 and 45 years. The court stated: "We talked about this a lot; right?" Defendant agreed. Defendant also agreed that he wanted to plead guilty to "regular armed robbery" in exchange for a 15-year prison term. The court stated:

> "I'll probably let you do it, but I have to know why. Why did you change your mind after telling me for so sure you wanted a trial?
>
> I'll tell you why I'm asking, so you know. Because I always—I'm straight with everybody. What I don't want is for you to come back in front of me in two weeks, two

months or two years and file papers and tell me that this was all a mistake and actually you really want a trial. So if you want to plead guilty and get this done today, like I said, I'll probably let you, but I may not let you change your mind back the other way. So you have to convince me this is really what you want to do."

Defendant responded:

"Yeah. It's really what I want to do. I feel that when I went yesterday to trial, even though I do feel somewhat that I could prevail, I just don't want to risk that. So I feel like I need to do what I need to do and go home."

Defendant confirmed that he talked it over with his attorney.

¶ 16    The trial court admonished defendant that he had a right to continue his plea of not guilty, to continue trial, and to see and hear the witnesses testify. The court admonished defendant that he was presumed innocent, that he could testify if he wanted to, that if he did not testify it would not be held against him, and that the jury would have to unanimously find him guilty. The court admonished defendant about the differences between a jury and a bench trial. The court confirmed that defendant spoke with defense counsel about what a trial is and that they discussed the facts of his case and who the witnesses might be. The court confirmed that defendant had no additional questions and that no one forced or threatened him to get him to plead guilty. The court also confirmed that no promises were made to defendant other than what was already discussed in court.

¶ 17    The trial court found that defendant's guilty plea was knowing and voluntary. The court further stated: "I think the record is replete with a factual basis, never mind your opening statements. Are the parties stipulating to that?" Defense counsel and the State each responded: "Yes." The court accepted the plea and sentenced defendant to 15 years, followed by 3 years of mandatory supervised release. The court agreed to recommend that defendant be placed in a facility that provides substance abuse treatment.

¶ 18    On June 7, 2016, defendant still represented by the same counsel, filed a motion to withdraw his guilty plea. In that motion, defendant alleged that he did not understand the terms of the plea negotiations and that neither his counsel nor the trial court properly advised him about his plea. Counsel did not file a certificate under Illinois Supreme Court Rule 604(d) (eff. Mar. 8, 2016). On June 14, 2016, defendant filed a *pro se* motion to withdraw his guilty plea, arguing that he was not advised by counsel as to the rights that he was surrendering, that he was forced by counsel to plead guilty, and that he had new evidence to present. At a status hearing on June 29, 2016, defense counsel advised the court that she was not arguing a motion to withdraw on defendant's behalf.

¶ 19    On August 15, 2016, the court held a hearing on defendant's *pro se* motion to withdraw his guilty plea. The court discussed with defendant his complaints about defense counsel's performance and reviewed in great detail the history of the case leading to the court's acceptance of defendant's plea. The court denied defendant's *pro se* motion. The court concluded that it had "no doubt" that defendant's decision to plead guilty was "a knowing and voluntary decision." The court further stated: "You haven't shown anything, remotely close to an insufficient performance by your attorney."

¶ 20    Defendant appealed, arguing that the matter must be remanded for further postplea proceedings because the court required defendant to represent himself at the hearing on his motion to withdraw the guilty plea without obtaining a waiver of counsel. We held that the

court appropriately questioned defendant about his *pro se* claims of ineffectiveness of counsel. We affirmed the denial of those claims, but we noted that the hearing was limited to defendant's *pro se* motion to withdraw the plea and that the court never considered counsel's motion to withdraw the plea. We also noted that counsel failed to file a Rule 604(d) certificate. We remanded the cause for "(1) the filing of a valid Rule 604(d) certificate; (2) the opportunity to file a new motion to withdraw the guilty plea; and (3) a new motion hearing." *People v. Moore*, 2018 IL App (2d) 160790-U, ¶ 18.

¶ 21 On February 4, 2020, new private counsel filed an amended motion to withdraw defendant's plea of guilty. In it, counsel argued that the plea must be withdrawn because the State failed to establish a factual basis for the amended charge of robbery while armed with a dangerous weapon other than a firearm.

¶ 22 On July 21, 2020, following a hearing, the trial court denied the motion. The court noted that it had considered the entire record, including the proceedings leading up to the plea. The court noted that the amendment to the indictment was made by agreement, "literally in the midst of trial for an armed robbery." "[T]he negotiation, which the defendant persuaded the Court to accept, was for an armed robbery without the firearm enhancement." The court found that defendant did not just agree to the plea but "really wanted" it and that defendant had "talked the Court into accepting it." The court quoted from the transcript of the guilty plea hearing as well as various transcripts of the pretrial proceedings. The court noted the principle that a factual basis for a plea can be found anywhere in the record. The court stated that "the record was replete with the factual basis, and counsel for both sides agreed." The court stated that it had considered the opening statements, the witness testimony, and the pretrial proceedings, including motions *in limine* and the Rule 402 conference. The court also noted that the law does not require that a factual basis reflect every element of an offense and that even if evidence of a dangerous weapon other than a firearm was not present in the record, that would not be enough to invalidate the plea because the other elements were overwhelmingly present.

¶ 23 The court concluded that defendant could not show a manifest injustice under the facts. The court stated:

"The defendant was in the midst of trial for an armed robbery for which, had he been found guilty, he would have been sentenced to a minimum of 21 years in prison and quite possibly more, something the Court discussed with the defendant prior to him going to trial. During trial, the defendant, perhaps realizing that, persuaded the State's attorney to terminate the trial and allow him to plead guilty to an offense for which he could have—for which he could have and did receive less than that, specifically 15 years in the Department of Corrections, 6 years less than the minimum of what he very possibly could have been found guilty of at trial and potentially more than 6 years less than what he possibly could have received at a sentencing hearing.

In other words, all of this inured to his benefit. Far from an injustice being worked here, the Court found in 2016 and continues to find today that justice was served by this plea. *** The legislature determined that, for an offense in which a defendant commits an armed robbery with a firearm, he should be sentenced to not less than 21 years in the Department of Corrections, and that's fine. The defendant here committed an armed robbery when he was 19 years old. And for the reasons the Court stated when

- 6 -

it accepted the plea of guilty, the Court was of the opinion that a 15-year sentence in the Department of Corrections served the ends of justice.

There's nothing that's changed since then. The factual basis was sufficient. There is no injustice that was worked here warranting this Court to allow the defendant to withdraw his plea, so the motion is denied."

¶ 24    Defendant timely appealed.

¶ 25                                              II. ANALYSIS

¶ 26    Defendant contends that we should reverse the trial court's denial of his motion to vacate his guilty plea because the court failed to comply with Illinois Supreme Court Rule 402(c) (eff. July 1, 2012). Specifically, defendant argues that the court accepted defendant's guilty plea to a charge of armed robbery with a dangerous weapon other than a firearm without an adequate factual basis for the dangerous-weapon element. The State responds that the court properly denied defendant's motion because defendant did not suffer a manifest injustice; rather, the plea agreement gave defendant a clear benefit both as to a shorter sentence and the dismissal of other charges.

¶ 27    A trial court's decision to grant or deny a motion to withdraw a defendant's guilty plea will not be disturbed absent an abuse of discretion. *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009). An abuse of discretion will be found only where the court's ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the court. *Id.* A defendant does not have an automatic right to withdraw a guilty plea. *Id.* at 520. Instead, he must show a manifest injustice under the facts. *Id.* "The decision of the trial court will not be disturbed unless the plea was entered through a misapprehension of the facts or of the law, or if there is doubt as to the guilt of the accused and justice would be better served by conducting a trial." *Id.*

¶ 28    Illinois Supreme Court Rule 402(c) (eff. July 1, 2012) provides that the trial court shall not enter a final judgment on a guilty plea without first determining that there is a factual basis for the plea. This requirement "protects those accused of crime 'by ensuring that they have not pleaded guilty by mistake or under a misapprehension, or been coerced or improperly advised to plead to crimes they did not commit.' " *People v. Bannister*, 378 Ill. App. 3d 19, 35 (2007) (quoting *People ex rel. Daley v. Suria*, 112 Ill. 2d 26, 32 (1986)). The factual basis for a guilty plea will generally consist of either an express admission by a defendant that he committed the acts alleged in the indictment or a recital to the court of the evidence that supports the allegations. *People v. White*, 2011 IL 109616, ¶ 17. There is a sufficient factual basis if there is a basis anywhere in the record from which the court could reasonably conclude that the defendant committed the elements of the offense to which he is pleading guilty. *People v. Barker*, 83 Ill. 2d 319, 327-28 (1980). The quantum of proof necessary to establish a factual basis for the plea is less than that necessary to sustain a conviction following a full trial. *Id.* at 327. Rule 402(c) does not require strict compliance, but there must be at least substantial compliance. Ill. S. Ct. R. 402(c) (eff. July 1, 2012); *Barker*, 83 Ill. 2d at 329.

¶ 29    The armed robbery statute provides, in relevant part, as follows:

"(a) A person commits armed robbery when he or she violates Section 18-1; and

(1) he or she carries on or about his or her person or is otherwise armed with a dangerous weapon other than a firearm; or

(2) he or she carries on or about his or her person or is otherwise armed with a firearm[.]" 720 ILCS 5/18-2(a)(1), (2) (West 2014).

A violation of subsection (a)(1) is a Class X felony (*id.* § 18-2(b)), which carries a sentencing range of between 6 and 30 years in prison (730 ILCS 5/5-4.5-25(a) (West 2014)). "A violation of subsection (a)(2) is a Class X felony for which 15 years shall be added to the term of imprisonment imposed by the court." 720 ILCS 5/18-2(b) (West 2014).

¶ 30    Defendant was charged under section 18-2(a)(2) with armed robbery while armed with a firearm. Thus, as the trial court repeatedly advised defendant, had defendant been convicted of this offense, he would have been subject to a mandatory minimum sentence of 21 years. Defendant pleaded guilty under section 18-2(a)(1) to armed robbery with a dangerous weapon other than a firearm. Thus, a conviction under this section subjected defendant to a sentencing range of between 6 and 30 years.

¶ 31    Defendant argues that the factual basis was insufficient to support his guilty plea to armed robbery with a dangerous weapon *other than a firearm* because the record established unequivocally that he was armed *with a firearm*. He asserts that those elements cannot both be satisfied at once. See *People v. Wright*, 2013 IL App (3d) 100522, ¶ 19 (holding that armed robbery while armed with a " 'dangerous weapon other than a firearm' " under section 18-2(a)(1) and armed robbery while armed with a " 'firearm' " under section 18-2(a)(2) are mutually exclusive in that the crimes do not contain the same elements; thus, a charge under section 18-2(a)(1) cannot be satisfied with proof that defendant was armed with a firearm). According to defendant, the trial court erred in accepting the plea, where it was not supported by a factual basis.

¶ 32    To be sure, although the trial court stated that the record was "replete with a factual basis," the record does not show that defendant was armed with a "dangerous weapon other than a firearm." The State charged defendant under section 18-2(a)(2) with committing the offense with a firearm. At trial, the State represented to the jury during opening statements that the evidence would show that defendant had "in his hand a loaded [.]38-caliber firearm" when he grabbed Johnson and told him to "[g]ive it to me," that "the gun" fell to the ground during the struggle between defendant and Johnson, that a "[.]38-caliber revolver" was found on top of a building near the area where a pursuing officer had briefly lost sight of defendant, and that defendant's DNA was found on the gun. At trial, Johnson testified that when he grabbed toward defendant's hands, he "felt a pistol" and that "[i]t felt like a revolver."

¶ 33    Nevertheless, we find that defendant is precluded from challenging his guilty plea because he expressly invited and acquiesced in the claimed error. It is well settled under the doctrine of invited error that a defendant cannot request to proceed in one manner in the trial court and later assert on appeal that the course of action was erroneous. *People v. Carter*, 208 Ill. 2d 309, 319 (2003). The doctrine of invited error or acquiescence is a procedural default sometimes described as estoppel. *People v. Harvey*, 211 Ill. 2d 368, 385 (2004). "[A] defendant's invitation or agreement to the procedure later challenged on appeal 'goes beyond mere waiver.' " *Id.* (quoting *People v. Villarreal*, 198 Ill. 2d 209, 227 (2001)). "To permit a defendant to use the exact ruling or action procured in the trial court as a vehicle for reversal on appeal would offend all notions of fair play [citation], and encourage defendants to become duplicitous." (Internal quotation marks omitted.) *Id.*

¶ 34    The record makes clear that defendant zealously sought out the plea agreement of which he now complains. Indeed, defendant stopped the jury trial proceedings after several witnesses,

including the victim, had testified, and he asked to reopen plea negotiations. At that point, the evidence amply supported the charge of armed robbery with a firearm. The State, although initially hesitant to do so, took time to thoughtfully consider defendant's request, and it ultimately agreed to amend the charge to allege a dangerous weapon other than a firearm so that defendant could be sentenced to a shorter prison term. Before accepting the plea, the trial court once again spoke extensively with defendant about his desire to plead guilty. There is no question that defendant was well aware of the terms of the plea. Defendant does not allege that the plea was unknowing or involuntary. Nor does defendant allege fraud or misrepresentation on the part of the State. He was properly admonished and expressly agreed to plead guilty to armed robbery with a dangerous weapon to benefit from a lesser sentence. The court asked defendant "to convince [it] this is really what [he] want[s] to do." As the court noted when it denied defendant's motion to withdraw his guilty plea, it was defendant who "persuaded the Court to accept" the negotiation. Defendant did not just agree to the plea but "really wanted" it and had "talked the Court into accepting it." To allow defendant to withdraw his plea under these circumstances would be manifestly unfair for two reasons. First, defendant had agreed to and benefitted from a more lenient sentence without the 15-year firearm enhancement. Second, allowing defendant to withdraw his plea could result in hardship to the State in prosecuting the case, given the passage of time and witness recollections. See *People v. Young*, 2013 IL App (1st) 111733, ¶ 46 (holding in postconviction proceedings that the defendant was estopped from challenging as void his negotiated consecutive sentences for first degree murder and attempted murder of 25 and 10 years in prison, respectively, for failing to include a mandatory 25-year firearm sentencing enhancement because the defendant had agreed to and benefitted from a more lenient sentence and because allowing the defendant to withdraw his plea could result in hardship to the State).

¶ 35        We note that, in his reply brief, defendant asserts that, because an adequate factual basis is a condition precedent to entering a judgment on a guilty plea, the lack of such a basis deprives the trial court of the "authority" to enter the judgment. Thus, defendant seems to suggest that the court's order is void. In support, defendant cites *White*, 2011 IL 109616, ¶ 17, for the proposition that "[u]nder Supreme Court Rule 402, a trial court cannot enter a final judgment on a plea of guilty without first determining that there is a factual basis for the plea." In *White*, the supreme court held that the defendant's 28-year prison sentence for murder imposed pursuant to a negotiated guilty plea was "void" because it did not include the 15-year mandatory sentencing enhancement for committing murder while armed with a firearm. *Id.* ¶ 21. The supreme court reasoned that the court did not have the authority to impose a lesser sentence than that mandated by statute. *Id.* ¶¶ 20-21. However, in *People v. Castleberry*, 2015 IL 116916, the supreme court abolished the void sentencing rule applied in *White*. *Castleberry* held that lack of personal or subject matter jurisdiction renders a judgment void but that the failure to comply with a statutory requirement (which is the essence of defendant's claim here) renders a judgment merely voidable. *Id.* ¶ 15. No argument is made that the court lacked personal or subject matter jurisdiction. As such, the alleged error renders the judgment voidable. A voidable judgment is not excepted from the invited-error doctrine. See generally *People v. Smith*, 406 Ill. App. 3d 879, 887 (2010) (distinguishing between voidable judgments subject to the invited-error doctrine and void judgments that are not subject to the doctrine). Defendant's argument in this case, including his failure to address the issue of voidability and his obvious invitation of the claimed error, is disingenuous.

¶ 36	Our supreme court "has viewed cases of acquiescence strictly, finding that a party's 'active participation in the direction of proceedings *** goes beyond mere waiver' such that the traditional exceptions to the waiver rule do not apply." *In re Detention of Swope*, 213 Ill. 2d 210, 218 (2004) (quoting *Villarreal*, 198 Ill. 2d at 227). Here, given defendant's actions below, we hold that he has waived, and is estopped from raising, his challenge to his guilty plea.

¶ 37	We would be remiss if we did not mention that neither defendant nor the State mentioned invited error in their briefs. This record illustrates one of the most patent examples of invited error that appellate counsel, as officers of the court, should have recognized, raised, and addressed. Defendant's instigation, participation in, and acceptance of the benefits of this invited error make a mockery of negotiated pleas of guilty. We admonish defendant's and the State's counsel that they have a responsibility and a duty, as officers of the court, to present the law as it exists, not just as it might support their claims or arguments.

¶ 38	                                    III. CONCLUSION

¶ 39	For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 40	Affirmed.