NOTICE

Decision filed 04/30/21. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 180225-U

NO. 5-18-0225

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 13-CF-1809 |
| | ) | |
| MONTRELL D. COOPER, | ) | Honorable |
| | ) | Zina R. Cruse, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Welch and Vaughan concurred in the judgment.

**ORDER**

¶ 1   *Held*: The defendant pleaded guilty knowingly, voluntarily, and intelligently, and not due to any misapprehension of the law, and because any argument to the contrary, or any other argument challenging the judgment of conviction, would lack arguable merit, the defendant's appointed counsel on appeal is granted leave to withdraw as counsel, and the judgment of conviction is affirmed.

¶ 2   The defendant, Montrell D. Cooper, pursuant to a partially negotiated agreement with the State, pleaded guilty to the first degree murder of Michelle L. Rowling, the mother of two young children. One of the children was fathered by the defendant when he and Rowling were in a relationship. The circuit court sentenced the defendant to imprisonment for a term of 50 years. He filed a timely motion to withdraw his guilty plea. The circuit court denied the motion, and the defendant perfected this appeal from the ruling. The defendant's appointed counsel on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit, and

1

on that basis it has filed with this court a motion to withdraw as counsel, along with a brief in support thereof. See *Anders v. California*, 386 U.S. 738 (1967). OSAD provided the defendant with a copy of its *Anders* motion and brief, and the defendant has filed with this court a *pro se* brief wherein he argues that the judgment of conviction should be reversed. This court has examined OSAD's *Anders* motion and brief, the defendant's *pro se* brief, and the entire record on appeal. For the reasons that follow, this court finds that the instant appeal lacks merit, obligating this court to grant OSAD's *Anders* motion and to affirm the judgment of conviction.

¶ 3                                    BACKGROUND

¶ 4      In December 2013, a St. Clair County grand jury returned a one-count indictment charging the defendant with first degree murder (720 ILCS 5/9-1(a)(1) (West 2012)). He was accused of stabbing Michelle L. Rowling to death. The circuit court appointed the public defender to represent the defendant. In February 2014, the State filed a notice of its intent to seek either a sentence of natural life imprisonment or an extended-term sentence of 60 to 100 years.

¶ 5      From early 2014 to late 2016, the case was continued several times, the defendant briefly represented himself, and the circuit court held hearings on two defense motions. The procedural history of this case during that period need not be detailed here, for no part of it is relevance to this appeal.

¶ 6      On November 9, 2016, the defendant, defense counsel, and the State appeared before the circuit court. The State announced that the parties had reached an agreement[1] under which the defendant would plead guilty to the charge of first degree murder and his prison sentence would be capped at 50 years. The circuit court asked the defendant, "Is that your understanding, Mr.

_____

[1]The parties' agreement included the disposition of two pending petitions to revoke the defendant's probation in two other felony cases unrelated to this matter.

2

Cooper?" and he answered, "Yes, ma'am." Then, the court asked him, "Do you understand all of that?" and he answered similarly.

¶ 7    In response to further inquiries from the circuit court, the defendant stated that he was 28 years old and had earned a high school diploma. He indicated that he did not have any mental or physical disability and was not taking any medication or other substance that could impair his understanding of what he was doing. He indicated that he had not had any difficulty in discussing the case with his lawyer, in understanding case-related documents, or in understanding anything that had been said in court that day. He further indicated that he had had sufficient time to discuss the case with his defense counsel and that he was satisfied with counsel's performance.

¶ 8    The court admonished the defendant as to the nature of the first degree murder charge[2] and the possible penalties for that charge, including imprisonment for a nonextended term of 20 to 60 years followed by 3 years of mandatory supervised release (MSR), imprisonment for an extended term, and life imprisonment. When the court asked the defendant whether he understood the nature of the charge and the possible penalties, he answered in the affirmative.

¶ 9    The court admonished the defendant as to his right to persist in pleading not guilty, his right to a trial, either by a jury or by the court alone, and the State's burden of proving him guilty beyond a reasonable doubt, and the defendant indicated his understanding of all those rights. The court admonished the defendant as to his rights at trial, specifically mentioning his right to confront the State's witnesses, his right to have defense counsel cross-examine the State's witnesses and to call witnesses for the defense, and his right to testify or to remain silent, and the defendant indicated his understanding of those rights. The court asked the defendant whether he understood

---

[2]The court also admonished the defendant on two pending petitions to revoke his probation in unrelated St. Clair County felony case Nos. 12-CF-295 and 13-CF-1366.

that by pleading guilty, he was waiving all of the rights that the court had described, and the defendant answered, "Yes, ma'am."

¶ 10     The court asked the State for a factual basis for a guilty plea, and the State provided a detailed one. Essentially, the State's evidence would show that on November 30, 2013, the defendant stabbed Michelle L. Rowling 40 to 50 times, mainly in the head and neck, thus causing her death, and the State's evidence would include the defendant's blood at the crime scene and certain incriminating statements made by the defendant to various relatives. The court asked the defendant whether anyone had threatened him or had promised him anything in an effort to persuade him to plead guilty, and the defendant answered, "No, ma'am." Finally, the court asked the defendant "How do you plead to the charge of first-degree murder?" and he answered, "Guilty." Finding that the guilty plea was made knowingly and voluntarily, and that it had a factual basis, the court accepted the plea. The court ordered the preparation of a presentence investigation report (PSI) and scheduled a sentencing hearing. On the defendant's motion, the court appointed Dr. Daniel Cuneo as an expert for the defense at sentencing.

¶ 11     The PSI, prepared by the St. Clair County probation department, showed that the defendant had graduated from East St. Louis High School in May 2007, and that he had held several low-wage jobs since then. In 2013, he was convicted of two felony offenses, aggravated battery and domestic battery, in two separate St. Clair County cases, Nos. 12-CF-295 and 13-CF-1366, respectively. This court notes that the defendant's victim in the instant case, Michelle L. Rowling, was also his victim in each of those two earlier cases.

¶ 12     On March 23, 2017, the court held a sentencing hearing. At the hearing's start, the circuit court asked the defendant whether he believed that he had any physical or mental disability that might impair his ability to understand the courtroom proceedings, or whether he had consumed

4

any medication or other substance that could affect his ability to understand, and the defendant answered each of those two questions in the negative. The court also asked the defendant whether he had had ample opportunity to prepare for the sentencing hearing, and whether he was satisfied with defense counsel's services, and he answered each of those two questions in the affirmative.

¶ 13 Each party called two witnesses at the sentencing hearing. Dr. Cuneo was one of the defendant's witnesses. Dr. Cuneo testified that he met with the defendant in January 2017. He diagnosed the defendant with "unspecified personality disorder," which manifested itself in explosive "rage reactions." According to Dr. Cuneo, the defendant had an IQ of 62 and the reasoning ability of a 10-year-old child. He became frustrated very easily and acted impulsively. During high school, the defendant was in "special ed" due to both a learning disability and behavioral problems, including fights with schoolmates. The defendant's tendency to "lash out" was exacerbated by his alcohol consumption and marijuana use. On cross-examination by the State, Dr. Cuneo testified that the defendant, at the time of the murder, was not delusional, knew that stabbing someone could cause death, and could have controlled his behavior if he so desired.

¶ 14 The defendant made a statement in allocution. He stated that he "want[ed] to say I'm sorry to my daughter and my stepson for taking their mom away from them," but he asserted that he was "not aware" of his actions and "couldn't control" himself on the night of the crime.

¶ 15 After hearing the attorneys' arguments, the court sentenced the defendant to imprisonment for a 50-year term and MSR for a 3-year term. Upon imposing this sentence, the circuit court asked the defendant whether he understood the sentence, and the defendant answered, "Yes, ma'am." The circuit court immediately proceeded to admonish the defendant that he had a right to file a notice of appeal if he thought that the appellate court should review anything that happened on the day of sentencing or on the day of his guilty plea. The circuit court further admonished him

on the need to file a motion to withdraw his guilty plea within 30 days, on the necessary contents of such a motion, on the consequences of having the motion granted, and on the need to file a notice of appeal within 30 days after a denial of the motion. After giving these admonishments, the court asked the defendant whether he understood them, and he answered, "Yes, ma'am."

¶ 16    On April 18, 2017, the defendant filed through counsel a one-page motion to withdraw his guilty plea. He claimed that he did not understand the consequences of pleading guilty.

¶ 17    On May 30, 2017, defense counsel filed a certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. Mar. 8, 2016), and the circuit court held a hearing on the defendant's motion to withdraw his guilty plea. Addressing the defendant personally, the circuit court asked whether defendant wanted to allege anything in addition to the motion's allegation that he did not understand the consequences of pleading guilty. The defendant answered in the affirmative, stating that he was dissatisfied with counsel's representation, and specifically counsel's failure to advise him, prior to the guilty plea, that he should go to trial and "try to get second-degree [murder]." The circuit court responded, "Well, you couldn't have gone to trial for Second Degree. So if that's not the case, is there any other complaint?" The defendant answered in the negative. The court asked the defendant whether he had any other complaint about counsel's representation during the course of the case, and the defendant indicated that he did not. The court found that there was no basis for a claim of ineffective assistance of counsel. Defense counsel stated that the defendant "would argue that he did not fully understand the consequences of his plea, that he didn't understand all the admonishments, that had he fully understood what exactly they meant, that he would have elected to go to trial rather than to plead guilty."

¶ 18    The circuit court, apparently while referring to a transcript of the guilty-plea hearing, asked the defendant whether he remembered various aspects of that hearing. The defendant recalled that

6

at the guilty plea hearing, he answered in the affirmative every time the court asked him whether he understood something; he acknowledged that he never indicated a lack of understanding. He remembered the court's informing him that the usual sentencing range was 20 to 60 years in prison, but he did not recall the court's informing him that if he were eligible for an extended term, he could be sentenced to prison for 60 to 100 years. He recalled the court's asking him, at the guilty plea hearing, whether he understood the nature of the charge and the possible sentences, and he remembered answering those questions in the affirmative. At that point, the court asked the defendant to specify what he failed to understand at the plea hearing, and the defendant replied that he could not think of it. The court asked the defendant whether he wanted an opportunity to speak with counsel, and the defendant answered in the affirmative.

¶ 19    Defense counsel then addressed the court, stating that the defendant wanted the circuit court to note that Dr. Cuneo had concluded that the defendant's comprehension was like that of a child, and he wanted the court to conclude that the defendant's limited intellectual abilities precluded him from understanding the consequences of pleading guilty. The circuit court expressed a desire to read the report that Dr. Cuneo had prepared for the defense in advance of the sentencing hearing, and defense counsel said that she would provide the circuit court with a copy of the report. The hearing on the defendant's motion to withdraw guilty plea ended with the circuit court's taking the matter under advisement.

¶ 20    On March 14, 2018, the circuit court entered a written order finding that the defendant had pleaded guilty knowingly and voluntarily, and denying his motion to withdraw his guilty plea. On April 10, 2018, the defendant filed a *pro se* notice of appeal, thus perfecting the instant appeal. The circuit court appointed OSAD as the defendant's attorney on appeal.

7

¶ 22    This appeal is from a judgment of conviction entered after the defendant's plea of guilty to first degree murder.  As previously mentioned, the defendant's appointed appellate counsel, OSAD, has concluded that this appeal lacks merit and has filed an *Anders* motion to withdraw as counsel.  In its brief accompanying the *Anders* motion, OSAD discusses four potential issues in this appeal, *viz.*: (1) whether the circuit court properly admonished the defendant pursuant to Illinois Supreme Court Rule 402(a) (eff. July 1, 2012); (2) whether the circuit court properly admonished the defendant pursuant to Illinois Supreme Court Rule 605(c) (eff. Oct. 1, 2001); (3) whether counsel's certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. Mar. 8, 2016) was adequate; and (4) whether the defendant pleaded guilty knowingly and voluntarily.  This court will address each of these four potential issues, beginning with the third issue, then the first and fourth issues, which will be considered together, and finally the second issue.

¶ 23    According to OSAD, one potential issue in this appeal is whether defense counsel's certificate of compliance with Rule 604(d) was adequate.  Rule 604(d) describes the duties that postplea counsel owes to a defendant who seeks to withdraw his guilty plea.  Postplea counsel has a duty to consult with the defendant, a duty to examine the court file and the reports of proceedings of the guilty plea and the sentencing, and a duty to make any necessary amendments to any *pro se* motion to withdraw guilty plea.  The rule also requires postplea counsel to file a certificate stating that he or she has fulfilled those specified duties.  Such a certificate enables the circuit court to ensure that counsel has reviewed the defendant's claim and has considered all the relevant bases for postplea motions.  *People v. Tousignant*, 2014 IL 115329, ¶ 16.  Counsel must strictly comply with the certification requirement.  *In re H.L.*, 2015 IL 118529, ¶ 8.  Here, postplea counsel filed the Rule 604(d) certificate on the day the circuit court held a hearing on the defendant's motion to

withdraw guilty plea, a motion that counsel had filed on the defendant's behalf several weeks earlier. Counsel's certificate is included in the record on appeal, and it contains all of the substance required by Rule 604(d); indeed, the certificate closely tracks the language of Rule 604(d). Counsel strictly complied with the certification requirement, thus establishing counsel's fulfillment of the duties owed to the defendant. See, *e.g.*, *People v. Wyatt*, 305 Ill. App. 3d 291, 297 (1999) (the certificate must give some indication that counsel performed the duties required under Rule 604(d)). Any argument to the contrary would be meritless. This court is confident that counsel fulfilled his duties and thus allowed the defendant a fair opportunity to challenge his plea of guilty.

¶ 24 The first and fourth potential issues discussed by OSAD in its *Anders* brief—whether the circuit court properly admonished the defendant pursuant to Rule 402(a) and whether the defendant pleaded guilty knowingly and voluntarily—are here considered together. Rule 402(a) states that a circuit court shall not accept a criminal defendant's plea of guilty without first informing the defendant, and determining that he understands, (1) the nature of the charge, (2) the possible penalties, (3) his right to plead guilty or to persist in pleading not guilty, and (4) that a plea of guilty would result in waiver of his right to a trial and his right to confront witnesses. Ill. S. Ct. R. 402(a) (eff. July 1, 2012). Rule 402 itself demands of the circuit court "substantial compliance" with its provisions. See also, *e.g.*, *People v. Burt*, 168 Ill. 2d 49, 64 (1995) (substantial compliance with Rule 402 is sufficient to establish due process in regard to a guilty plea).

¶ 25 In the instant case, the circuit court did not accept the defendant's guilty plea until it had carefully admonished the defendant as to the nature of the charge, the possible penalties, and the other important matters specified in Rule 402(a), and had determined, based upon the defendant's unequivocal and unambiguous answers to the court's queries, that the defendant understood all

those matters. In addition to its substantial compliance with Rule 402(a), the circuit court substantially complied with Rule 402(b), by questioning the defendant personally, in open court, thereby allowing the circuit court to confirm the terms of the parties' previously-described plea agreement and to determine that the defendant's guilty plea was voluntary, and not the result of force, threats, or any promises apart from the plea agreement. See Ill. S. Ct. R. 402(b) (eff. July 1, 2012). All of the defendant's answers to the circuit court's numerous questions at the plea hearing indicated that the defendant understood, at the time he pleaded guilty, the nature of the charge against him, the possible penalties therefor, his right to plead guilty or not guilty, his right to a trial, his rights at trial, and the serious consequences of pleading guilty. Defendant's answers indicated that he was pleading guilty of his own volition, and not due to any improper influences. In short, everything that occurred at the plea hearing indicated a knowing and voluntary plea of guilty; nothing suggested an unknowing or involuntary plea. Accordingly, there would be no merit to any argument that the circuit court improperly admonished the defendant pursuant to Rule 402(a) or that the defendant pleaded guilty unknowingly and involuntarily.

¶ 26    Finally, OSAD suggests that a potential issue in this appeal is whether the circuit court properly admonished the defendant pursuant to Rule 605(c). Rule 605(c) specifies the admonishments that a circuit court, at the time sentence is imposed, must give to a defendant who has pleaded guilty pursuant to a negotiated plea agreement. All of those admonishments relate to a defendant's right to appeal, the filing of a motion to withdraw guilty plea, the consequences or possible consequences of a guilty plea's withdrawal, etc. A circuit court must substantially comply with Rule 605(c). *People v. Dominguez*, 2012 IL 111336, ¶¶ 22, 45. Here, as the transcript of the sentencing hearing shows, the circuit court substantially complied with the rule, informing the defendant of his right to appeal, the necessity of filing a written motion to withdraw guilty plea,

the 30-day timeframe for filing a motion to withdraw, the need to include in the motion all of the reasons that withdrawal of the plea should be allowed, the possibility of a free transcript and free legal representation, consequences of having the plea withdrawn, and the 30-day timeframe for filing a notice of appeal. As the sentencing transcript also shows, the defendant unambiguously indicated his understanding of all those admonishments. Furthermore, this court notes that the defendant did in fact file a timely motion to withdraw his guilty plea, and after that motion was denied, he filed a timely notice of appeal, in conformity with the admonishments.

¶ 27 In sum, this court has considered each of the four issues that OSAD has identified as potential issues in this appeal. An examination of the record on appeal reveals that none of them have merit.

¶ 28 As previously mentioned, the defendant has responded to OSAD's *Anders* motion by filing with this court a *pro se* brief. In that brief, the defendant presents one argument—that the circuit court abused its discretion when it denied his motion to withdraw his guilty plea. The defendant asserts that the circuit court "failed to properly consider his mental disability and lack of intelligence in assessing the voluntariness and intelligence of [his] guilty plea." The defendant does not claim that the circuit court, at the guilty-plea hearing, failed to provide him with some necessary admonishment or otherwise admonished him improperly. Instead, he claims that he did not—indeed, could not—understand the circuit court's admonishments.

¶ 29 A defendant does not have an absolute right to withdraw a guilty plea; he may withdraw the plea only if he shows a "manifest injustice" under the facts of his case. *People v. Delvillar*, 235 Ill. 2d 507, 520 (2009). The manifest injustice standard may be met by showing that the plea was entered through the defendant's misapprehension of the facts or of the law. *Id.* Granting or denying a defendant's motion to withdraw a guilty plea is a matter left to the sound discretion of

11

the circuit court. *Id.* at 519. Therefore the circuit court's ruling is reviewed for an abuse of discretion, which will be found only if the ruling is arbitrary, fanciful, or unreasonable. *Id.*

¶ 30    In his *pro se* brief, the defendant repeatedly mentions his low IQ of 62 and Dr. Cuneo's stated opinion that he has the reasoning abilities of a 10-year-old child. He argues that his low level of overall functioning precluded his understanding the court's admonishments, rendering his guilty plea unknowing, unintelligent, and involuntary. The record does not support this *pro se* argument. As this court has described in detail *supra*, the circuit court scrupulously admonished and questioned the defendant prior to accepting his guilty plea, in compliance with Rule 402(a), and the defendant consistently expressed his understanding of all those admonishments. The purpose of Rule 402(a) admonishments is to ensure that a defendant understands his plea, the rights that he waives by pleading guilty, and the consequences of pleading guilty. See, *e.g.*, *People v. Williams*, 2012 IL App (2d) 110559, ¶ 13. By complying with the rule, the circuit court ensured the defendant's understanding of those important matters. At the time it accepted the guilty plea, the circuit court explicitly found that the defendant understood the charge against him, the terms of his plea agreement, his right to a trial and his other rights, the consequences of pleading guilty, etc. The transcript of the plea hearing does not include anything that causes this court to question the circuit court's explicit findings. This court is confident that the defendant's guilty plea was a knowing and intelligent plea, as well as a voluntary one.

¶ 31                                        CONCLUSION

¶ 32    The defendant pleaded guilty to first degree murder knowingly, intelligently, and voluntarily, following careful admonishment and questioning by the circuit court. No argument to the contrary would have arguable merit. Indeed, this appeal does not present any issue of

arguable merit. Therefore, OSAD is granted leave to withdraw as the defendant's appellate counsel, and the judgment of the circuit court is affirmed.

¶ 33    Motion granted; judgment affirmed.