NOTICE
Decision filed 07/05/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 210092-U

NO. 5-21-0092

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, )<br><br>Plaintiff-Appellee, )<br><br>v. )<br><br>KENNY A. BALFOUR, )<br><br>Defendant-Appellant. ) | Appeal from the<br>Circuit Court of<br>Clinton County.<br><br>No. 20-CF-139<br><br>Honorable<br>Mark W. Stedelin,<br>Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Cates and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's denial of the defendant's motion to withdraw his guilty plea is affirmed where the record indicates that the defendant was properly admonished under Illinois Supreme Court Rule 402 (eff. July 1, 2012), and his guilty plea was voluntarily and knowingly made.

¶ 2    The defendant, Kenny Balfour, appeals from the denial of his motion to withdraw his guilty plea to aggravated battery by means of discharging a firearm (720 ILCS 5/12-3.05(e)(1) (West 2020)).  He contends that he should be allowed to withdraw his plea because he felt threatened into accepting the guilty plea; his counsel misrepresented that the state's attorney had agreed to a seven-day furlough as part of the terms of the plea; his

1

counsel filed a bond assignment of $1000, which showed that counsel was financially motivated to persuade him to accept the plea; his counsel did not investigate his self-defense claim; and his counsel misrepresented that he would receive a sentence of 29 years in prison when the attempted murder offense that the State declined to charge carried a minimum sentence of 26 years. For the following reasons, we affirm.

¶ 3                                 I. BACKGROUND

¶ 4     On October 1, 2020, the State charged the defendant with one count of aggravated battery in that the defendant shot Cody Gates in the abdomen with a .40-caliber handgun. On January 6, 2021, the defendant entered a negotiated plea of guilty to aggravated battery, a Class X felony. In exchange for the plea, the State agreed not to file any additional charges resulting from the incident, including attempted murder, and to recommend a sentence of 11 years' imprisonment to be followed by 3 years of mandatory supervised release (MSR). At the hearing, the trial court made sure the defendant understood the nature of the plea and the charge that he was pleading guilty to. The court admonished him that, if convicted of aggravated battery, he could be sentenced to 6 to 30 years in prison to be followed by a 3-year MSR period and about the rights he was giving up by pleading guilty. The court then asked the defendant whether anyone had forced or threatened him into pleading guilty, and whether anyone had promised him anything other than the plea terms to get him to plead guilty. The defendant responded, "No, sir," to both questions. The court also asked him whether pleading guilty was his free and voluntary act, and he responded, "Yes, sir." The court then found that the guilty plea was knowingly and voluntarily made.

¶ 5    The State then read the following factual basis:

"If this case would proceed to trial, state would call Detective Todd Timmermann of the Clinton County Sheriff's Department who would testify that he ran a trace summary on a Taurus .40 caliber handgun with serial number SAN02943. And that—that handgun was bought at Ron and Jo's Firearms and Sporting Supply in O'Fallon, Illinois, on September 15, 2020, by Denaysha Tauria Crisp.

The state would then call a representative from Ron and Jo's Firearms who would testify that on September 10th of 2020, the defendant *** was seen exiting a blue colored Dodge Journey with Ms. Crisp at Ron and Jo's in O'Fallon, Illinois. Ms. Crisp and the defendant shopped for firearms there in Ron and Jo's and then bought two handguns, one of which was the Taurus 24/7 Pro, serial number SAN02943.

Then on September 15th, 2020, the blue Dodge Journey returned to Ron and Jo's where Ms. Crisp exited, went in to pick up *** the handgun and Mr. Balfour *** was in the vehicle and was sighted when she came back out *** with the handgun.

The state would then call Officer Curt Weh of the Breese Police Department who would testify that on September 28th, 2020, he received a call from dispatch of multiple shots fired at Cherry Court Apartments in Breese, Clinton County, Illinois. When Officer Weh arrived at the scene, he found a victim leaning up against a car who was later identified as Cody Gates who *** had a gunshot [wound] in the abdomen. When Officer Weh went up to a group of people, Officer Weh then observed the defendant coming out from behind an apartment complex and that person was then identified as the defendant Mr. Balfour.

State would call Sergeant Mark Berndsen of the Breese Police Department who would testify that a search was conducted around the apartments for a gun and a gun was found at the northeast part of the building, building 409, by Sergeant Berndsen. The gun was located on the east side of the fenced in area of thick weeds and brush. That gun borne the serial number SAN02943 which is the same gun that was purchased in the presence of the defendant.

The state would then call Cody Gates. Cody Gates would testify that on September 28, 2020, that there were four subjects who were fighting at the Cherry Court Apartments in Breese, Clinton County, Illinois, one of which was the defendant. Mr. Gates went up to try to breakup the fight. The defendant then tackled Mr. Gates and [Mr. Gates] was able to get assistance in getting Mr. Balfour off of him. The defendant then ran away and Gates followed him but fell down. When Mr. Gates looked up, Mr. Balfour had a gun pointed at Gates. At that point, Gates rolled behind a tree. When Gates looked back out from behind the tree is when the defendant shot Mr. Gates. Mr. Balfour then ran northeast towards the corner of the property which was *** where the gun was later found.

3

The state would also call additional various eyewitnesses that would ID the defendant, Mr. Balfour, as the shooter on the property."

¶ 6    After finding that there was a factual basis for the plea, the trial court accepted the guilty plea.  The court then sentenced the defendant according to the terms of the plea, *i.e.*, to 11 years in prison to be followed by a 3-year period of MSR.  The defendant's counsel then requested that the mittimus be stayed for seven days, so he could spend that time with his siblings.  However, the State indicated that it was not in agreement with the furlough, and the court denied the request.

¶ 7    On February 2, 2021, the defendant retained new counsel, and his new counsel filed a motion to withdraw his guilty plea.  In the motion, the defendant alleged that he told his guilty plea counsel that he had evidence to support his self-defense claim, but his counsel failed to investigate the claim, indicating there was no time for an investigation because the plea offer was only good for a limited time.  The defendant alleged that his counsel also told him that, if he did not accept the plea offer, he would be charged with attempted murder, lose the case at trial, and be sentenced to 29 years' imprisonment because of the color of his skin.  The defendant argued that he relied on his counsel's statements because he was young, did not have any previous criminal history, and had no working knowledge of the criminal justice system.

¶ 8    The defendant further alleged that, prior to entering the courthouse for the guilty plea hearing, his counsel told him and his family that the state's attorney had agreed to a seven-day furlough if he took the plea deal.  However, after entering the courthouse, his attorney told him that they would have to ask for the furlough after the agreed sentencing

4

was entered by the trial court because the state's attorney had not agreed to it. At that time, he felt like he had no choice but to plead guilty because he thought he would be sentenced to 29 years' imprisonment if he did not accept the offer. He believed that his attorney's statement that he would receive 29 years' imprisonment was a threat to get him to accept the plea, so the attorney could collect the bond assignment, and had his counsel not made this threat, he would not have pled guilty and would instead have hired new counsel to investigate his self-defense claim. The defendant further argued that the court erred by not further inquiring, at the guilty plea hearing, about whether his plea was voluntary. Attached to the motion to withdraw guilty plea was the defendant's affidavit, which reiterated the allegations in the motion.

¶ 9    At the March 17, 2021, hearing on the motion to withdraw guilty plea, the defendant's counsel argued that the interactions that the defendant had with his guilty plea counsel prior to entering the guilty plea were based on threats. The defendant was told that he would be convicted of attempted murder charges because of the color of his skin. The defendant, who had no experience with the criminal justice system, entered the guilty plea after taking counsel's advice. He was told to answer every question the judge asked him in the affirmative. However, when he was in the courtroom, everything that he had previously discussed with his counsel was different. He thought the furlough was part of the deal, which was not the case. He also had evidence that he acted in self-defense, and he wanted his counsel to investigate it, but his counsel indicated that there was no time for an investigation because the plea deal was only available for a limited

time. Thus, his counsel argued that the defendant did not go into the plea hearing openly and voluntarily knowing the full terms of the deal.

¶ 10    In response, the State argued that the terms of the plea agreement were recited three times during the guilty plea hearing, and each time, it was noted that the State was agreeing to forego the additional attempted murder charge. The State argued that the defendant could not now seek to withdraw his guilty plea on the basis that he thought he could be convicted of a higher offense, as that was part of the plea agreement. The State noted that, at the guilty plea hearing, the trial court questioned the defendant about whether the plea was knowingly and voluntarily made, and the defendant responded in the affirmative. At that time, the defendant indicated that no threats had been made to get him to plead guilty.

¶ 11    After hearing the arguments, the trial court denied the defendant's motion to withdraw his guilty plea. In making this decision, the court noted that the defendant was asked whether he understood what was going on and whether he understood the terms of the negotiated plea. Although there were conversations about a furlough mentioned in the motion, that was not recited as part of the plea agreement in the courtroom, and the defendant knew that it was not going to happen. The court indicated that the defendant felt like he did not have an opportunity to completely speak with his attorney, but he came into the courtroom and indicated that he wanted to plead guilty and that his guilty plea was voluntary. Thus, the court denied the motion. The defendant appeals.

¶ 12                                    II. ANALYSIS

¶ 13    On appeal, the defendant contends that he should be allowed to withdraw his guilty plea where his plea was not voluntarily made.  Generally, the decision to grant or deny a motion to withdraw a guilty plea rests within the sound discretion of the circuit court and, as such, is reviewed for an abuse of discretion.  *People v. Jamison*, 197 Ill. 2d 135, 163 (2001).  An abuse of discretion occurs when the trial court's decision is arbitrary, fanciful or unreasonable, or where no reasonable person would take the view adopted by the trial court.  *People v. Illgen*, 145 Ill. 2d 353, 364 (1991).

¶ 14    A defendant has no absolute right to withdraw a plea of guilty.  *People v. Hughes*, 2012 IL 112817, ¶ 32.  Instead, defendant must show a manifest injustice under the facts involved.  *People v. Delvillar*, 235 Ill. 2d 507, 520 (2009).  The withdrawal of a guilty plea is appropriate where the plea was entered through a misapprehension of the facts or of the law or where there is doubt as to the accused's guilt and justice would be better served through a trial.  *Hughes*, 2012 IL 112817, ¶ 32.  Defendant bears the burden of demonstrating sufficient grounds to support a motion to withdraw the plea.  *People v. Stevens*, 324 Ill. App. 3d 1084, 1090 (2001).

¶ 15    A defendant's guilty plea must be voluntarily and knowingly made.  *People v. Williams*, 188 Ill. 2d 365, 370 (1999).  To knowingly and voluntarily plead guilty, a defendant must be advised of the direct consequences of the plea.  *Id.* at 371.  Illinois Supreme Court Rule 402 (eff. July 1, 2012) outlines the process for a court to determine whether a plea of guilty is voluntarily and intelligently made.  Specifically, Rule 402(b) provides as follows:

"The court shall not accept a plea of guilty without first determining that the plea is voluntary. If the tendered plea is the result of a plea agreement, the agreement shall be stated in open court. The court, by questioning the defendant personally in open court, shall confirm the terms of the plea agreement, or that there is no agreement, and shall determine whether any force or threats or any promises, apart from a plea agreement, were used to obtain the plea." Ill. S. Ct. R. 402(b) (eff. July 1, 2012).

¶ 16   Here, the record does not show that the trial court abused its discretion when it denied the defendant's motion to withdraw his guilty plea. The defendant was fully admonished by the trial court in accordance with Rule 402 before he tendered his guilty plea. The record shows that he was advised of the terms of the plea, the consequences of pleading guilty, and the prescribed sentencing range for the offense that he was pleading guilty to (aggravated battery). The defendant acknowledged that he understood the terms of the plea, *i.e.*, that if he pled guilty to aggravated battery, the State would not file any additional charges stemming from the incident, which included attempted murder, and the State would recommend a sentence of 11 years' imprisonment followed by a 3-year period of MSR. The defendant also indicated that he understood the implications of his guilty plea, that no one forced or threatened him into entering the guilty plea, and that no one promised him anything other than what was previously stated to enter the plea. When asked whether entering a guilty plea was his free and voluntary act, he responded in the affirmative.

¶ 17   Although the defendant now claims that he felt threatened into accepting the plea because he was told he would be convicted of attempted murder and sentenced to 29 years, we note that there is nothing in the record to support this contention, except for the defendant's self-serving affidavit. In *People v. Johnson*, 154 Ill. 2d 356, 362 (1993), our

8

supreme court found that there was nothing in the record to support defendant's claim that he pled guilty because he was being harassed, as the only black inmate, by three white inmates in the county jail. The court noted that the only evidence presented to support the defendant's claim of harassment was his self-serving testimony. *Id.* Like in *Johnson*, the only evidence to support the defendant's claim of threats here was his own self-serving affidavit; the defendant has presented no direct evidence to substantiate his claims. Moreover, the promise not to file additional charges from the incident, including attempted murder, was part of the terms of the plea deal and cannot now be used to challenge the guilty plea as based on threats. Further, if the defendant's counsel told him that he would receive a total of 29 years if convicted of attempted murder, we note that the State indicates that the attempted murder charge would have carried a minimum sentence of 26 years to be followed by a 3-year period of MSR.

¶ 18    As for the defendant's claim that his counsel was financially motivated to persuade him to accept the plea offer because counsel filed a bond assignment of $1000, there is no support in the record for that claim. The filing of the bond assignment merely showed that counsel sought to be paid for his services, which was entirely appropriate. Also, the defendant's claim that he was told that the state's attorney had agreed to a seven-day furlough was contradicted by the record. The terms of the plea deal were set out at the guilty plea hearing prior to the defendant accepting the plea, and the terms did not include any mention of a furlough. Although there was discussion of a furlough after the defendant entered his guilty plea, the state's attorney indicated that the request was not agreed to and presented argument for why the request should be denied. After

hearing counsels' arguments, the trial court denied the request. Thus, the defendant's counsel raised the issue at the guilty plea hearing, but there was no indication that counsel had told the defendant that the furlough had already been agreed to by the State.

¶ 19 With regard to his argument that his counsel failed to properly investigate his self-defense claim before advising him to accept the guilty plea, we again find that the defendant has failed to provide any supporting evidence for this argument, other than his affidavit, which merely stated that he had a self-defense claim. He provided absolutely no detail regarding the substance of that claim. Also, we note that the defendant has not framed this argument as an ineffective assistance of counsel claim.

¶ 20 Based on the above, we find that the trial court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea. Before accepting the guilty plea, the trial court properly admonished the defendant about the terms of the plea deal as well as the consequences of pleading guilty. The court also questioned the defendant to determine whether his plea was intelligently and voluntarily made. Thus, the defendant was properly admonished under Rule 402, and there was no indication from the record that his guilty plea was not knowingly and voluntarily made. Accordingly, we affirm the court's denial of the defendant's motion to withdraw his guilty plea.

¶ 21                                III. CONCLUSION

¶ 22 For the foregoing reasons, we affirm the judgment of the circuit court of Clinton County.

¶ 23 Affirmed.