NOTICE

Decision filed 08/24/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220266-U

NO. 4-22-0266

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Tazewell County. |
| | ) | |
| v. | ) | No. 11-CF-713 |
| | ) | |
| GINA T. GONZALEZ, | ) | Honorable |
| | ) | Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Vaughan and McHaney concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The order of the circuit court of Tazewell County denying the defendant's motion to withdraw guilty plea is affirmed where the defendant was allowed to proceed *pro se* and where the court's denial of the defendant's motion was not an abuse of discretion.

¶ 2    This is an appeal from the Fourth District, Tazewell County circuit court, denying the defendant, Gina Gonzalez's, *pro se* motion to withdraw her guilty plea. On December 5, 2016, the defendant pled guilty to first degree murder of her mother, Quyen Phan, and was sentenced to 25 years' imprisonment to be followed by 3 years of mandatory supervised release. After sentencing, the defendant filed a *pro se* motion to withdraw her guilty plea. Following a hearing, the court denied the defendant's motion. For the reasons that follow, we affirm.

1

¶ 3                                    I. BACKGROUND

¶ 4      This case first went to trial in the Tazewell County circuit court. The defendant was convicted of first degree murder and sentenced to 50 years' imprisonment. That conviction was overturned by the Third District in *People v. Gonzalez*, 2016 IL App (3d) 130944-U.[1] On November 8, 2016, following remand of the defendant's conviction, Peter Lynch and Dale Thomas were appointed to represent the defendant.[2]

¶ 5      On December 5, 2016, the defendant entered into a negotiated plea of 25 years' imprisonment for first degree murder and was sentenced to 25 years' imprisonment, half of her original sentence. During the hearing, the parties agreed that the sentencing range was 20 to 60 years' imprisonment. The defendant was then admonished by the trial court.

¶ 6      The State presented the factual basis that on December 21, 2011, at 11 p.m. Marquette Heights Police and Fire were dispatched to a residence for a medical emergency. On arrival, the defendant directed them to the bedroom where her mother was unresponsive. Her mother was transported to Pekin Hospital. Officers spoke to the defendant who stated that on December 19, 2011, she and her mother got in a fight. Her mother swung a chair at her and then fell down, striking her head on the floor. The defendant reported that her mother complained of a headache and vomited but declined medical assistance. The defendant then traveled out of state and returned on December 21. The defendant noted that the mail had not been picked up and that the front door was locked. She entered through a window, found her mother unresponsive, and called 9-1-1.

¶ 7      Dr. Gene Couri, an emergency room physician at Pekin Hospital, would testify that the defendant's mother suffered a serious brain injury and bruises to her body. He would testify that

_____

[1]At the time of the appeal, Tazewell County was located in the Third District. We note that it is now located in the Fourth District and was transferred to the Fifth District from the Fourth.

[2]Thomas had represented her at her first trial alongside Kirk Bode whom had since retired.

the mother's injuries were not consistent with falling and striking her head and opined that the brain injury was more consistent with blunt force trauma. On December 22, 2011, the victim was transferred to St. Francis hospital and on December 23, 2011, she was pronounced dead. An autopsy was performed by Dr. Scott Denton who would testify that the victim died from craniocerebral injuries due to blunt trauma on the back and left side of her head.

¶ 8 Detective Josh Shelton would testify that he interviewed the defendant on December 23, 2011, and the defendant admitted that she had an argument with her mother on December 19 and that it was possible that she had pushed her mother to the floor.

¶ 9 Defense counsel agreed that the factual basis was consistent with discovery, and the defendant acknowledged that the factual basis represented what the State would present at trial. The trial court found the factual basis for the plea to be sufficient and accepted the plea.

¶ 10 The defendant timely filed a *pro se* motion to withdraw her guilty plea. In her motion, she claimed that her plea was involuntary and the result of coercion, that the trial court erred in denying her a change of venue for trial, that the factual basis did not support the finding of her guilt, and that she received ineffective assistance of counsel. Joe Bembenek was appointed to represent her. Following appointment of counsel, the defendant filed numerous *pro se* motions. The trial court filed a written order on December 18, 2017, stating that it would not consider the defendant's *pro se* motions as she was represented by competent counsel and was not proceeding *pro se* pursuant to *People v. Haywood*, 2016 IL App (1st) 133201.

¶ 11 On September 3, 2020, Bembenek filed an amended motion to withdraw guilty plea and vacate judgment. On November 14, 2020, the defendant asked it be withdrawn as it was filed without her consent and that she be allowed to represent herself. The defendant then filed *pro se* amended motions to withdraw her guilty plea on July 12, 2021, and March 4, 2022. The amended

3

motion to withdraw alleged actual innocence, that her plea was not knowing and voluntary, ineffective assistance of counsel, deprivation of discovery, and that the State and her counsel withheld material facts.

¶ 12    On April 1, 2022, the trial court held a hearing on the defendant's motion to withdraw guilty plea via Zoom at the defendant's request. The defendant chose to proceed *pro se*. Three of her prior counsel, Bembenek, Lynch, and Thomas, were present at the hearing.

¶ 13    At the outset of the hearing, the trial court reviewed the applicable law to withdraw a guilty plea. The court then instructed the defendant to go through her pleading and issues one at a time as they were complex and difficult to follow at times. First, the court asked the defendant why she claimed her plea was not knowingly or voluntarily entered into. She explained that, on remand, she felt unsafe in the jail. She was aware she had the option to either go to trial or take a plea. Because she felt unsafe, she requested an attorney. She felt uncomfortable when she found out Thomas would be representing her. She informed Thomas that she did not want him to represent her, and he responded that she was "stuck with him." She asked him to request a change of venue because she feared for her life because of her affiliations with law enforcement. She felt she was framed for the charge because of her prior unconstitutional conviction. If she was going to go to trial again, she wanted to be tried in a different county. According to the defendant, Lynch and Thomas told her they were not going to file a change of venue.

¶ 14    The trial court then stopped the defendant and said that it wanted to address the attorneys on the issue. The court asked Thomas if the defendant ever raised the issue to him that she did not feel safe in the Tazewell County jail and that was why she accepted the plea, and he responded "never." The court then asked Lynch, and he likewise replied "never." The court asked the defendant if during the time between remand and her plea, she filed anything with the court

4

claiming she was pleading guilty because she felt unsafe in Tazewell County. The defendant informed the court that she had attempted to file a *pro se* motion but that the motion was stricken by the court because she was represented by counsel.

¶ 15 As to the issue of a change of venue, the trial court asked Thomas, "[D]id you explore that and evaluate that and come up with a conclusion from a legal side of things on that topic?" Thomas explained that there was no legal basis for a change of venue because the defendant's claim was based on the fact that she did not like the jail, not because there was prejudice in the county against her. Lynch did not have an independent recollection of this conversation but agreed with Thomas's assessment.

¶ 16 As to the defendant's complaints about the jail, Thomas explained that any grievances she had might have come up in the two-year time period before remand, but it did not come up during the relevant time period post-remand through the plea hearing. Both Lynch and Thomas stated that they would have taken some type of affirmative step if it had come up. The trial court took note of the defendant's objection to this response.

¶ 17 The trial court then denied the defendant's motion to withdraw her guilty plea on the change of venue issue. The defendant then continued to talk about her issues with the jail and delved into her unrelated issues, so the court muted her.

¶ 18 The trial court explained the following:

"For the record, I've put Ms. Gonzalez on mute because what I've just heard here recently is about as good of an example as I could think of as to the substance of her pleadings over the years where she will then diverge into theories that aren't germane to the topic at hand including today's motion to withdraw guilty plea, talking about other people causing the crime, talking about crimes committed against her, et cetera. So in order to keep this hearing focused today, I will have to mute her from time to time and unmute her and indicate as such on the record giving her a chance to speak."

5

¶ 19    The defendant was then unmuted, and she said that her next issue was the deficiency of the factual basis. She argued that, on the day of her guilty plea, her lawyers had the opportunity to object to the factual basis but failed to do so. She was then muted. In response to the trial court's question regarding the factual basis, Thomas responded that the factual basis was consistent with discovery and that there was no reason to challenge it. Lynch agreed with Thomas. The trial court then denied the motion on the factual basis and unmuted the defendant.

¶ 20    Next, the trial court addressed the defendant's claim that she was not provided her discovery. Thomas explained that, after the first conviction was overturned, "the second time around she just was focused on pleading guilty and we never got too much into the discovery although I had it all available if at that time she was wanting to see something. And, basically, if there wasn't going to be a plea, we'd start redoing that if she needed to read it again." Lynch agreed with this explanation. The court denied the motion on the issue of discovery.

¶ 21    The defendant then addressed the trial court and claimed the court was favoring the attorneys by asking them questions. The court explained to the defendant that the court was required by the law to inquire of the attorneys on any ineffective assistance of counsel claim. The defendant next claimed that counsel erred in not presenting mitigating factors at her plea agreement. The court explained to her that mitigating factors were not presented where the sentence was agreed to by the defendant.

¶ 22    The next issues raised by the defendant were police misconduct in gathering the evidence that became the factual basis of the plea, medical negligence regarding her mother's care, and her counsels' failure to investigate the negligence as well as their failure to investigate the multiple crime scenes. As to the police misconduct, Thomas responded that there were motions to suppress filed during the first trial, and he reviewed the record and file, but there was nothing that led him

6

to conclude there was any police misconduct or involvement in the victim's death. He also indicated that if there had been any evidence of misconduct, he would have filed a motion. As to the failure to investigate multiple crime scenes, Thomas and Lynch agreed that there was only one crime scene, and it was the victim's house. The trial court then addressed Bembenek, and he stated that he agreed with Lynch and Thomas on all issues that had been raised, and there was no basis to file a motion to withdraw guilty plea on those issues. The court then denied the motion based on the police misconduct or failure to investigate medical negligence or multiple crime scenes.

¶ 23    As to counsel's failure to request a bill of particulars, the trial court found no merit in that argument and denied the motion. Next, the defendant argued that counsel failed to challenge the warrants. All three attorneys stated they did not see any issues as to the warrants, otherwise a motion to suppress would have been filed.

¶ 24    Upon being unmuted, the defendant began speaking directly to Thomas and so the trial court muted her and told her not to speak directly to the attorneys and to instead address the court directly. Next, the defendant argued that because her mother was a foreign citizen, she had a right to a representative from her native country. The court explained that the defendant herself was a United States citizen and that any representation for her mother would have been moot as she was the victim of the crime. The court then denied that portion of the motion.

¶ 25    The defendant again raised a "medical negligence" issue, so the trial court clarified with Thomas that there was a medical pathologist in the case, and he was "pretty much" consistent with the autopsy report and the coroner's report. Lynch and Bembenek agreed that there were no medical inconsistencies that were discovered but not raised. The court then denied the issue.

¶ 26    Next, the defendant raised her claim of actual innocence. The trial court noted that the issue was very germane to her withdrawal of guilty plea. The court began by questioning Thomas.

7

He explained that the defendant admitted there was a struggle with her mother. Her mother threw a chair at her, her mother got pushed, and there were some potential self-defense issues. The defendant said she had an abrasion on her knuckle that might have been from the incident. The defendant had reported that after that, everyone settled down. Her mother had a bump on her head, had a headache, and took some aspirin. The defendant then left the residence for two days, went to Wisconsin, returned two days later, and found her mother in bed unresponsive. The defendant then called 9-1-1. Ultimately the issue for the defense was what happened during those intervening two days. Originally the defense was interested in whether her mother had a second fall, or if somebody else broke into the residence. The medical experts opined that the head injury was a slow hemorrhage that, without medical treatment, ultimately caused her death.

¶ 27 Thomas further explained:

> "And so when we investigated it, it was, you know, was it some subsequent injury besides the fight that occurred a couple days earlier until *** the mom was found in the bed? And we had no other indication of any actual innocence because even the charge that she pled to was doing an act with the probability of death. And there was bump on the head. [The defendant] even asked [her mother]—[the defendant's] version was, You want some aspirin? Should I take you to the hospital? Mom didn't want to go to the hospital, and our expert even said, Well, you know, there's—vomit had been in the toilet and it was flushed, so that suggests mom was well enough to at least get to the toilet, to bend down and flush it. And there was aspirin-type in her blood, so she took some aspirin. But, unfortunately, for mother, mother went to bed and slowly hemorrhaged to death."

¶ 28 All of these above facts and circumstances were fully discussed with the defendant, and she was aware that they could have been presented at a trial. Although Bembenek was the counsel that added the actual innocence claim to the defendant's amended motion to withdraw guilty plea at the defendant's request, he agreed with Thomas's evaluation of the evidence. The trial court asked whether an actual innocence or lack of evidence as to defendant's guilt defense was taken into account in the ultimate plea of guilty. Thomas, Lynch, and Bembenek all answered yes.

¶ 29    The trial court noted that the fact that the defendant went from a 50-year sentence to a 25-year sentence on remand indicated effective assistance of counsel "in that the risk of significant sentence was reduced through the actions of the attorneys upon remand including taking into account the defense or lack thereof and the risk of going to trial and being found guilty again." The court then found in favor of the State on that point.

¶ 30    Next, the defendant alleged prosecutorial misconduct. The trial court questioned the State as to its conduct in handling this case and found against the defendant on that point. The defendant alleged a failure to investigate the witness statement of Stephanie Gerdhold. Thomas summarized the statement that was in the police report for the trial court. The defendant argued that whether the statement was true went to the question of whether the defendant was the last person to see her mother conscious. The court informed the defendant that a discovery issue like that should be handled in a postconviction petition and that it was not appropriate to question the accuracy of evidence at a hearing on a motion to withdraw guilty plea.

¶ 31    The trial court then turned its attention to the State. The State pointed out that there were remaining allegations in the defendant's written motion that had not been addressed. The defendant had raised a double jeopardy issue, which Thomas addressed, and the court found against the defendant. The defendant had alleged that her counsel withheld material evidence and "straight up lied to her." All three defense attorneys denied the allegation, and the court found against the defendant. The defendant had claimed that the presentment of the case to the grand jury was handled improperly and unethically, but her counsel failed to file a motion to dismiss. Thomas indicated to the court that he found no grounds to challenge the grand jury indictment, and the court found against the defendant.

¶ 32    The defendant had also claimed that Lynch forced her to take the plea. The trial court questioned counsel as to whether they required, forced, or unduly influenced the defendant to plead guilty. Thomas responded by denying the allegation and also noted that the defendant was also claiming ineffective assistance of counsel. However, between November 4, 2016, and December 5, 2016, he visited her at the jail five times. He was also in court with her twice, had three telephone calls with her, and had received 20 voicemails from her. Lynch was with him during one of the visits. Lynch also denied telling the defendant that there were "no more appeals after this."

¶ 33    The State summarized its position that:

> "The defendant has no legitimate claims to withdraw her guilty plea. She has not provided proof of actual innocence. There's no proof of prosecutorial or police misconduct. There's no discovery violations that have been proven here. No double jeopardy issues. The factual basis was sufficient as her defense attorneys also indicate. She has not demonstrated that any of her attorneys were ineffective which would have had any effect on her plea. She was properly admonished during her plea. The plea was knowing and voluntary, and there's nothing in the plea transcript to suggest any legal basis for withdrawing the plea. So the State is asking that the motion be denied."

The trial court adopted the State's conclusion and summary and denied the defendant's motion to withdraw guilty plea in its entirety.

¶ 34                                II. ANALYSIS

¶ 35    On appeal, the defendant alleges that she was denied a proper hearing under Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) where the court instead conducted a *Krankel* hearing (*People v. Krankel*, 102 Ill. 2d 181 (1984)) and denied her the right to self-representation.

¶ 36    Illinois Supreme Court Rule 604(d) governs the procedures to be followed where a defendant seeks to challenge a judgment entered after pleading guilty. *People v. Johnson*, 2019 IL 122956, ¶ 24. Rule 604(d) provides that no appeal challenging a plea of guilty shall be taken unless defendant first files in the trial court a motion to withdraw the plea and vacate the judgment. Ill. S. Ct. R. 604(d) (eff. July 1, 2017).

¶ 37   "[T]he plea-bargaining process, and negotiated plea agreements, are vital to, and highly desirable for, our criminal justice system," and plea bargaining is to be encouraged when properly administered. *People v. Donelson*, 2013 IL 113603, ¶ 18. "In order to satisfy due process, a guilty plea must be affirmatively shown to have been made voluntarily and intelligently." *People v. Fuller*, 205 Ill. 2d 308, 322 (2002). A defendant does not have an automatic right to withdraw a guilty plea, as "[a] plea of guilty is a grave act that is not reversible at the defendant's whim." (Internal quotation marks omitted.) *People v. Burge*, 2021 IL 125642, ¶ 37. Rather, defendant must show "a manifest injustice under the facts involved" to withdraw a guilty plea. *People v. Hughes*, 2012 IL 112817, ¶ 32. Withdrawal is appropriate where the plea was " 'entered on a misapprehension of the facts or of the law, or in consequence of misrepresentations by counsel or the State's Attorney or someone else in authority.' " *People v. Davis*, 145 Ill. 2d 240, 244 (1991) (quoting *People v. Morreale*, 412 Ill. 528, 531-32 (1952)).

¶ 38   The defendant bears the burden of showing that "the circumstances existing at the time of the plea, judged by objective standards, justified the mistaken impression." *Id.* The decision to deny a motion to withdraw a guilty plea rests in the trial court's sound discretion and is reviewed for an abuse of discretion. *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009). "An abuse of discretion will be found only where the court's ruling is arbitrary, fanciful, unreasonable, or no reasonable person would take the view adopted by the trial court." *Id.*

¶ 39   On appeal, the defendant claims that the trial court conducted a *Krankel*-type hearing in place of the hearing contemplated by Rule 604(d) and therefore infringed on her right to self-representation in presenting her case and confronting and cross-examining witnesses. The defendant alleges that the hearing conducted by the court gave the appearance that the court was not a neutral arbiter as it controlled the presentation of the defendant's case, determined which

11

witnesses would be called, and conducted the examination of said witnesses. We disagree with the defendant's characterization of the hearing held by the court.

¶ 40 The right of a defendant to represent herself is as basic and fundamental as the right to counsel. *People v. Nelson*, 47 Ill. 2d 570, 574 (1971). *Krankel* and its progeny require the trial court to inquire into a defendant's *pro se* posttrial claims that she was denied the effective assistance of counsel. *People v. Ayres*, 2017 IL 120071, ¶ 11; *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003). This inquiry, which is sometimes referred to as a "preliminary *Krankel* inquiry" (*People v. Jolly*, 2014 IL 117142, ¶ 28), requires the court to ascertain the nature of defendant's ineffective assistance of counsel claims and evaluate their potential merits (*People v. Mays*, 2012 IL App (4th) 090840, ¶ 58). To understand the factual bases of defendant's allegations, it is proper for the court to question both trial counsel and defendant. *Ayres*, 2017 IL 120071, ¶ 12.

¶ 41 Here, the trial court held a hearing on the defendant's motion to withdraw guilty plea as required by Rule 604(d). At the defendant's request she was allowed to appear via Zoom and represent herself. The court allowed the defendant to present each of her arguments as to why her motion to withdraw guilty plea should be granted in turn. The fact that the court conducted *Krankel*-type inquiries of counsel on the defendant's ineffective assistance claims was not improper. The defendant was informed by the court that she was allowed to ask, through the court, any question of counsel regarding her claims. The court also took all of the defendant's arguments into consideration in making its determination and noted the defendant's objections throughout the hearing. Nothing in the record indicates that the defendant was denied her right to question counsel or present her arguments to the court.

¶ 42 Therefore, the trial court's denial of the defendant's motion to withdraw her guilty plea was not an abuse of discretion.

¶ 43                                    III. CONCLUSION

¶ 44    For the foregoing reasons, the order of the circuit court of Tazewell County is hereby affirmed where the court's denial of the defendant's motion to withdraw guilty plea was not an abuse of discretion.


¶ 45    Affirmed.