NOTICE
Decision filed 07/05/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230663-U

NO. 5-23-0663

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 18-CF-482 |
| | ) | |
| JULIUS D. EVANS, | ) | Honorable |
| | ) | Neil T. Schroeder, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WELCH delivered the judgment of the court.
Justices Barberis and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where the summary dismissal of the defendant's postconviction petition was proper, and where no meritorious argument to the contrary can be made on appeal, this court grants the defendant's appointed appellate attorney leave to withdraw as counsel, and it affirms the judgment of the circuit court.

¶ 2    The defendant, Julius D. Evans, is serving an aggregate prison sentence of 35 years for second degree murder, unlawful possession of a weapon by a felon, and reckless discharge of a firearm. He appeals from the circuit court's summary dismissal of his petition for postconviction relief. The defendant's appointed attorney in this appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks substantial merit. On that basis, OSAD has filed with this court a motion to withdraw as counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), along with a memorandum of law in support of that motion. OSAD gave proper notice to

1

the defendant. This court gave him an opportunity to file a *pro se* brief, memorandum, or other document explaining why OSAD should not be allowed to withdraw as counsel, or why this appeal has merit, but the defendant has not taken advantage of that opportunity. This court has examined OSAD's *Finley* motion and the accompanying memorandum of law, as well as the entire record on appeal, and has concluded that this appeal does indeed lack merit. Accordingly, OSAD is granted leave to withdraw as counsel, and the judgment of the circuit court is affirmed.

¶ 3                                    BACKGROUND

¶ 4     In February 2018, the defendant was charged with two counts of first degree murder, intentional and knowing, for the shooting death of Tyrone A. Grady. In March 2018, a superseding indictment followed. A few years later, the State filed an amended information, in anticipation of a negotiated plea by the defendant. The amended information charged the defendant with three counts, *viz.*: second degree murder (720 ILCS 5/9-2(a)(1) (West 2018)), a Class 1 felony; unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)), a Class 3 felony; and reckless discharge of a firearm (*id.* § 24-1.5(a)), a Class 4 felony. The count charging second degree murder alleged that the defendant "struck the victim [*i.e.*, Grady] with a dangerous weapon," thereby causing his death.

¶ 5     On October 26, 2021, the defendant, defense counsel, and an assistant state's attorney appeared before the circuit court for a fully negotiated guilty plea and sentencing. The defendant pleaded guilty to each of the three charges in the amended information, and the court sentenced him to 20 years for second degree murder, 10 years for unlawful possession of a weapon by a felon, and 5 years for reckless discharge of a firearm, with all three sentences consecutive, for an aggregate sentence of 35 years. (The 5-year term for reckless discharge of a firearm was an extended-term sentence, based on a prior felony.) Before accepting the plea and imposing sentence, the court had informed the defendant of, and had determined that he understood, the

2

nature of the charges; the minimum and maximum sentences prescribed by law for each charge, including the penalty to which he was subjected because of prior convictions or consecutive sentences; that he had the right to plead guilty or not guilty; and that by pleading guilty, there would not be a jury trial or a bench trial, so that by pleading guilty he would waive his right to a trial and all of his rights at trial, including the right to be confronted by the witnesses against him. See Ill. S. Ct. R. 402(a) (eff. July 1, 2012). Also, before accepting the pleas, the court had determined that the defendant understood the terms of the plea agreement, which were stated in open court, and that there were no threats or force or promises, apart from the plea agreement itself, used to obtain the pleas, and that the pleas were voluntary. See Ill. S. Ct. R. 402(b) (eff. July 1, 2012). The court did not enter a final judgment before determining that there was a factual basis for each of the three pleas. Ill. S. Ct. R. 402(c) (eff. July 1, 2012). After imposing sentence, the court asked the defendant whether the sentencing was what he had negotiated, and whether he understood the sentences, and he replied in the affirmative to both questions. Finally, the court admonished the defendant about his right to appeal and the need for a motion to withdraw plea, etc., all in accordance with Illinois Supreme Court Rule 605(c) (eff. Oct. 1, 2001).

¶ 6     On March 21, 2022, nearly five months after he was sentenced, the defendant filed a *pro se* motion to withdraw his guilty pleas. The circuit court entered a written order that denied the defendant's motion due to untimeliness. The defendant appealed. Appointed appellate counsel moved to withdraw as counsel due to the appeal's lack of merit, pursuant to *Anders v. California*, 386 U.S. 738 (1967). This court granted counsel's motion to withdraw as counsel, and it dismissed the appeal due to the defendant's untimely filing of the motion to withdraw guilty pleas. *People v. Evans*, No. 5-22-0178 (Apr. 14, 2023) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 7    On May 17, 2023, the defendant filed a *pro se* petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)). The defendant claimed (1) that he received ineffective assistance from direct-appeal counsel when counsel failed to argue that his motion to withdraw pleas was not untimely due to his own fault but rather because of his lack of access to legal research, legal documents, etc.; (2) that plea counsel "failed to inadequately [*sic*] bring forward an argument of sentencing error"; (3) that the circuit court failed to admonish him "under Rule 604(d) that a Motion to Vacate and Lift Guilty Plea would be necessary and filed within 30 days, and or a Motion to reconsider in the event Defendant was challenging his sentence"; (4) his sentences violate the one-act, one-crime rule; (5) consecutive sentences are not permissible where, as here, the offenses were committed "as a single course of action"; and (6) the defendant "had no prior convictions prior to February 11, 2018, that would make Defendant eligible for extended term sentencing." (February 11, 2018, was the date the offenses in this case were committed.)

¶ 8    Apparently accompanying the *pro se* postconviction petition was an unsworn paper written by the defendant. In it, he wrote that on October 29, 2021—three days after his guilty pleas and sentencing—he was transferred from the Madison County jail to the Graham Correctional Center's reception and classification unit. There, "he was immediately placed in quarantine for 14 days" without any access to the law library, legal assistance, etc.

¶ 9    On July 18, 2023, the court entered a written order that summarily dismissed the postconviction petition. The court concluded that the claims of ineffective assistance by plea counsel and by direct-appeal counsel were frivolous and patently without merit. In regard to the claim that the one-act, one-crime rule was violated, the court found that the defendant had agreed to a factual basis that "supported convictions for both second degree murder and reckless discharge

4

of a firearm," and it therefore concluded that this claim, too, was frivolous and patently without merit. The court did not discuss the other specific claims presented by the defendant in his petition.

¶ 10    The defendant now appeals from the summary-dismissal order. Some additional background information will be provided, as needed, in the analysis section of this order.

¶ 11                                    ANALYSIS

¶ 12    As previously noted, OSAD has filed a *Finley* motion to withdraw as counsel; the defendant has not filed a response. In the memorandum supporting its *Finley* motion, OSAD raises two potential issues for review, namely: (1) whether the defendant's postconviction petition set forth the gist of a constitutional claim, and (2) whether the circuit court complied with the Post-Conviction Hearing Act in summarily dismissing the defendant's petition. This court agrees with OSAD that both of these potential issues are without merit.

¶ 13    The Act provides a procedural mechanism through which a criminal defendant may assert that his conviction resulted from a substantial violation of his federal or state constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2022); *People v. Smith*, 2015 IL 116572, ¶ 9. A proceeding under the Act is a collateral proceeding, not an appeal from the judgment of conviction. *People v. English*, 2013 IL 112890, ¶ 21. A criminal defendant initiates a proceeding under the Act by filing a petition in the circuit court. 725 ILCS 5/122-1(b) (West 2022). "The petition shall *** clearly set forth the respects in which [the defendant's] constitutional rights were violated. The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." *Id.* § 122-2. The Act requires the circuit court to examine a defendant's postconviction petition, and enter an order thereon, within 90 days after the petition is filed and docketed. *Id.* § 122-2.1(a). A circuit court needs to determine within the 90-day timeframe whether it should summarily dismiss the defendant's petition as frivolous or patently

5

without merit (*id.* § 122-2.1(a)(2)) or should order the petition to be docketed for further consideration (see *id.* § 122-2.1(b)). The court needs to make that determination without any input from the State. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996).

¶ 14     A *pro se* postconviction petition may be dismissed as frivolous or patently without merit only if its allegations, taken as true and liberally construed, fail to state the gist of a constitutional claim. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). In other words, the petition may be dismissed "only if [it] has no arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). "A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* "An example of an indisputably meritless legal theory is one which is completely contradicted by the record." *Id.* In order to meet the "gist" standard, a defendant " 'need only present a limited amount of detail' " in his petition, and he need not make legal arguments or cite to legal authority. *People v. Delton*, 227 Ill. 2d 247, 254 (2008) (quoting *Gaultney*, 174 Ill. 2d at 418). "However a 'limited amount of detail' does not mean that a *pro se* petitioner is excused from providing any factual detail at all surrounding the alleged constitutional deprivation." *Id.* The pleading requirements for a *pro se* petition certainly are low, but they are real, and they must be met if the petition is to avoid summary dismissal. See *Hodges*, 234 Ill. 2d at 9.

¶ 15     In the memorandum that accompanies its *Finley* motion, OSAD first discusses the issue of whether the defendant's postconviction petition sets forth the gist of a constitutional claim. To determine whether this assessment is correct, this court must examine, one after another, the individual claims presented in the petition.

¶ 16     In his postconviction petition, the defendant's first claim was that he had received ineffective assistance from direct-appeal counsel when counsel failed to argue that his motion to

6

withdraw pleas was not untimely due to his own fault, but rather because of his lack of access to legal research, etc. Illinois Supreme Court Rule 604(d) gives a defendant who has pleaded guilty pursuant to a fully-negotiated plea a window of 30 days from the date of sentencing in which to file a motion to withdraw guilty plea and vacate judgment, and if he does not meet the 30-day deadline, he cannot appeal from the judgment that was entered upon his plea and sentencing. Ill. S. Ct. R. 604(d) (eff. July 1, 2017). The defendant was sentenced on October 26, 2021, and nearly five months passed before he finally filed his motion to withdraw guilty pleas. The defendant attributed the lateness of his filing to a lack of access to legal research, etc., for a period of two weeks. However, Rule 604(d) does not provide any exceptions to the 30-day filing deadline. His direct-appeal counsel cannot be faulted for handling the direct appeal as it did, *i.e.*, by filing an *Anders* motion to withdraw as counsel due to the defendant's failure to file a motion to withdraw his pleas within 30 days after sentencing. (In addition, it is impossible to imagine how 2 weeks, or 14 days, without access to prison library materials can possibly excuse a defendant from meeting a deadline of 30 days.) This claim did not state the gist of a constitutional claim.

¶ 17    In his postconviction petition, the defendant's second claim was that plea counsel had failed to raise "an argument of sentencing error." The defendant continued, stating that he "did not wish to challenge the actual conviction" but merely wanted to "challenge the sentence handed down" in the case. The defendant did not specify any grounds on which his attorney could have attacked his sentence. A bare allegation of sentencing error is not cognizable under the Act. See, *e.g.*, *Delton*, 227 Ill. 2d at 258 (the claim that counsel " 'failed' to investigate all possible witnesses" was a broad conclusory allegation, not cognizable under the Act). Furthermore, the defendant had pleaded guilty pursuant to a fully-negotiated agreement with the State. Under that circumstance, plea counsel could not have attacked the sentence only; a motion to withdraw the

guilty pleas and vacate the judgment needed to be filed. See Ill. S. Ct. R. 604(d) (eff. July 1, 2017). This claim, too, failed to state the gist of a constitutional claim.

¶ 18    The defendant's third postconviction claim was that the circuit court failed to admonish him "under Rule 604(d) that a Motion to Vacate and Lift Guilty Plea would be necessary and filed within 30 days, and or a Motion to reconsider in the event Defendant was challenging his sentence." This claim is positively rebutted by the record. After the circuit court had accepted the defendant's pleas and had imposed the sentences, and after the defendant had indicated that the sentences were the ones for which he had negotiated and that he understood them, the court admonished the defendant as follows:

> "There's one last matter I need to advise you of then, and that is your right to appeal. If you are unhappy or dissatisfied with the judgement [*sic*] and sentence of the Court, you have the right to appeal. However, since you pled guilty, in order to exercise that right you would first need to file a Motion to Withdraw your plea. That motion would need to be in writing and filed with this court within 30 days of today's date.
>
> In that motion, you must set forth every reason why you believe this Court should allow you to withdraw your plea. Any claim of error not raised in that motion would be deemed waived for appeal purposes. What that means is you could not then raise that issue on any subsequent appeal."

This admonishment was the one required by Illinois Supreme Court Rule 605(c) (eff. Oct. 1, 2001). The defendant indicated his understanding of the admonishment. Because the record positively rebuts the defendant's postconviction claim that he was not advised of the need for a motion to withdraw pleas, the claim cannot be taken as true. Being completely rebutted by the record, the claim is wholly without merit.

8

¶ 19    The defendant's fourth postconviction claim was that his sentences violate the one-act, one-crime rule. The one-act, one-crime rule prohibits multiple offenses from being "carved from the same physical act." *People v. King*, 66 Ill. 2d 551, 566 (1977). The defendant pleaded guilty to three offenses—second degree murder, unlawful possession of a weapon by a felon, and reckless discharge of a firearm. In the first of these three offenses, the physical act consisted of striking the victim (*i.e.*, Tyrone Grady) with a dangerous weapon. In the second of these three offenses, the physical act consisted of knowingly possessing on or about his person a handgun. In the third of these three offenses, the physical act consisted of discharging a firearm in a densely populated residential neighborhood. Here, each of the three physical acts was unique; the three crimes were not carved from the same act. Thus, there can be no violation of the one-act, one-crime rule.

¶ 20    The fifth claim in the defendant's postconviction petition was that consecutive sentences are not permissible where the offenses "were committed as a single course of action." Nothing else was stated as part of this claim. Regardless of what else can be said about this claim, the defendant may be estopped (*i.e.*, precluded) from challenging his sentence where he knowingly and voluntarily agreed to the terms of the sentencing and received the benefit of a plea agreement, including a more lenient sentence. *People v. Moore*, 2021 IL App (2d) 200407, ¶ 34. Here, the defendant had agreed to his sentences as part of a fully negotiated plea agreement. Under that agreement, the initial charges of two counts of first degree murder were discarded and replaced by three new charges of second degree murder, unlawful possession of a weapon by a felon, and reckless discharge of a firearm, and the defendant pleaded guilty to those three charges in exchange for consecutive sentences that totaled 35 years. Those 35 years were to be served at 50%. If, on the other hand, the defendant had been convicted of first degree murder, with the 25-year mandatory firearm enhancement, he would have faced a sentence of at least 45 years, to be served

9

at 100%. See 730 ILCS 5/5-4.5-20(a), 5-8-1(a)(1)(d)(iii), 3-6-3(a)(2)(i) (West 2018). He avoided this much harsher result because of the guilty- plea agreement. The defendant is estopped from challenging his sentencing because he chose to acquiesce in the claimed error in the circuit court.

¶ 21    The sixth (and final) claim in the defendant's postconviction petition was that the defendant "had no prior convictions prior to February 11, 2018, that would make Defendant eligible for extended term sentencing." Here, too—as with the fifth claim in the defendant's petition—the defendant may be estopped from challenging his sentence where he consented to the sentence and received the benefit of the plea agreement. In addition, the extended-term sentence of five years for reckless discharge of a firearm, a Class 4 felony, was fully warranted. In March 2013, the defendant was convicted in Missouri of nonsupport in excess of $5000. At the guilty-plea hearing on October 26, 2021, the defendant's plea counsel agreed that this Missouri conviction would be equivalent to a felony in Illinois. Thus, the defendant met both the prior-conviction requirement and the timing requirement for an extended-term sentence under section 5-5-3.2(b)(1) of the Unified Code of Corrections (*id.* § 5-5-3.2(b)(1)).

¶ 22    None of the six claims presented in the defendant's postconviction petition stated the gist of a constitutional claim. All of the claims were frivolous and patently without merit.

¶ 23    In the memorandum accompanying its *Finley* motion, OSAD next discusses the issue of whether the circuit court complied with the Act in summarily dismissing the defendant's postconviction petition. As noted *supra*, a postconviction proceeding is initiated when a defendant files a postconviction petition, and after the petition is filed, the circuit court has 90 days to decide whether it should summarily dismiss the petition as frivolous or patently without merit, and the court must make that determination without input from the State. Here, the defendant filed his petition on May 17, 2023, and the circuit court entered its written summary-dismissal order on

July 18, 2023 (file-stamped on July 19, 2023). Thus, the circuit court entered its summary-dismissal order within the 90-day timeframe, and apparently without input from the State. The procedural requirements of the Act were met.

¶ 24                                CONCLUSION

¶ 25    In his postconviction petition, the defendant failed to state the gist of a constitutional claim. The circuit court summarily dismissed the petition, and it did so in full compliance with the statutory postconviction procedures. No argument to the contrary would have any merit. Therefore, OSAD is granted leave to withdraw as counsel, and the judgment of the circuit court is affirmed.

¶ 26    Motion granted; judgment affirmed.

11